UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

WHAT HURTS, LLC,

       Plaintiff,

v.                                        Civil No. 2:22cv552

VOLVO PENTA OF THE AMERICAS, LLC,

       Defendant.

## OPINION AND ORDER

This matter is before the Court on a motion for summary judgment filed by Defendant Volvo Penta of the Americas, LLC ("Volvo Penta"). ECF No. 53. Plaintiff What Hurts, LLC ("What Hurts") filed a response in opposition, ECF No. 61, and Volvo Penta filed a reply, ECF No. 62. On December 5, 2023, the Court held a hearing on the matter. For the reasons stated below, the Court **GRANTS in part and DENIES in part** Volvo Penta's motion.

### I. BACKGROUND[1]

Volvo Penta manufactures marine engines for use in boats that are designed and built by other companies. What Hurts is the record owner of a 60-foot motor yacht (the "Vessel"), which was designed and manufactured by Midnight Express, a Miami-based boat provider. When What Hurts purchased the Vessel from Midnight Express in October of 2019, the Vessel had been used for some

---

[1] Unless otherwise stated, these background facts are drawn from the undisputed statements of fact in the parties' summary judgment briefing and the parties' factual submissions at the summary judgment hearing.

period of time and was equipped with four engines (the "Original Engines") and four lower units (the "Original Lower Units").[2] These engines and lower units were all manufactured by Seven Marine, LLC, a company wholly owned by Volvo Penta.  The Original Engines came with Seven Marine's limited warranty, which Volvo Penta administered as the owner of Seven Marine.[3]

## A. Pre-Release Agreement

Shortly after What Hurts purchased the Vessel, What Hurts discovered performance issues related to the Original Engines.[4] What Hurts reported these issues to Volvo Penta, and according to What Hurts, Volvo Penta tried to remedy the engine problems for the better part of a year.  Ultimately, however, the attempted repairs were unsuccessful.

In early 2021, the parties began negotiating a deal whereby What Hurts would release all possible legal claims related to the Original Engines in exchange for replacement Seven Marine engines.[5] At some point during the negotiations, however, What Hurts learned

---

[2] The "lower units" are the part of the boat motor that transfers the power and rotation from the engine to the propeller shaft, which moves the propeller and consequently moves the boat.

[3] Volvo Penta was not involved in the sale of the Vessel, and neither Volvo Penta nor Seven Marine were involved in selecting or installing the Original Engines or Original Lower Units on the Vessel.

[4] At the hearing on this motion, What Hurts proffered that the Vessel was not getting up on plane and that water was coming over the stern of the boat.

[5] These replacement engines were the same type as the Original Engines.

about the existence of DPH-brand lower units, which "might improve the performance of the Vessel." ECF No. 61-1 ¶ 17. What Hurts's representative, Lee Grammas, then spoke with Volvo Penta's representative, Tony Kelleher, about including DPH-brand lower units as part of the settlement agreement.

Later, after speaking with Midnight Express, Grammas told Kelleher that Midnight Express advised him to stick with the original Seven Marine lower units "because they know it works [and] they never use[d] the [DPH] system."[6] ECF No. 54-5; ECF No. 54, at 6; ECF No. 61, at 3. Volvo Penta representative Kelleher responded by text:

> I've got [to] tell you we have had a lot of success with the DPH drives. Obviously before Volvo Penta bought Seven Marine this was not an option but since then DPH is the standard because the hole shot is better[,] fuel efficiency is better[,] and maneuverability is better particularly at low speed. If it was my Boat I would go with a DPH but it's yours it's your choice I'd advise you to reconsider.

ECF No. 54-5. After this exchange, What Hurts requested the DPH lower units.

### B. The Release Agreement

On March 11, 2021, What Hurts's representatives signed a General Release and Confidentiality Agreement (the "Release")

---

[6] According to an affidavit provided by What Hurts, Midnight Express indicated that "they had not ever used the Upgraded DPH Lower Units on a vessel they had built before." ECF No. 61-1 ¶ 27.

related to the Original Engines.[7]   In the Release, Volvo Penta agreed to provide four refurbished Seven Marine engines (the "Replacement Engines") and four upgraded DPH lower units (the "Upgraded Lower Units") for $10,000.   ECF No. 35-2, at 1.   These engines would be sent to Man O' War in Florida, an authorized Volvo Penta dealer, for installation.   Volvo Penta agreed to "work with Man O' War to complete the application reviews and propeller selection [for the engines]."[8]   Id.   And importantly, Volvo Penta agreed to provide a limited warranty for the Replacement Engines and Upgraded Lower Units (the "Limited Warranty"):

> [F]or 12 months or a maximum of 300 hours of operation from the date of commissioning, whichever occurs first. With the exception of the applicable warranty period, the warranty conditions are based upon the original [engines] warranty statement.   Commissioning must be completed no later than April 8, 2021; otherwise, the warranty will commence on that date.

Id.

In exchange, What Hurts agreed to waive all actions, causes of action, and claims "whether at law or in equity, whether known or unknown" which may have been caused by or relate to the Original

---

[7] Though the Release does not name What Hurts as a party, it names Grammas and Brent Loring, who are both representatives of What Hurts.   Loring is also the sole member of What Hurts.   ECF No. 35 ¶¶ 1-2.   The parties agree that the Release is binding on What Hurts.   ECF No. 54, at 7 n.4; ECF No. 61, at 4.

[8] The parties do not define "application reviews," but it appears to refer to the process of assessing the performance of engines on a vessel and recalibrating the configuration of engines (as needed) to achieve proper performance of the engines on a vessel.   By contrast, the parties appear to use the phrase "the application" to refer to the use (more generally) of the Replacement Engines with the Upgraded Lower Units on the Vessel.

Engines.  Id.  Additionally, What Hurts "agree[d] that [it] will be responsible to purchase and pay for propeller sets for the Replacement Engines, as well as all charges related to the removal and replacement of engines, haul out, block, launching, lay days and miscellaneous yard fees, etc." Id.  The Release then provides that "[What Hurts] understand[s] and agree[s] that the foregoing represents the sole and exclusive obligation of the Released Parties under this Agreement." Id.  The Release concludes with a confidentiality agreement, an acknowledgement that the Release "shall be deemed to have been entered into in the Commonwealth of Virginia," and choice of law and forum provisions.[9]  Id. at 1-2.

### C. Post-Release Agreement

The Replacement Engines and Upgraded Lower Units were sent to Man O' War, but shortly after installation, the parties agree that the Replacement Engines and Upgraded Lower Units were not working together on the Vessel as expected.  According to What Hurts, the configuration of the Replacement Engines with the Upgraded Lower Units was plagued by persistent water pressure issues.  See ECF No. 61 ¶¶ 94, 103, 110-14.

---

[9] The choice of law provision states that "[a]ll questions concerning the validity, interpretation or performance of any of [the Release's] terms or provisions, or of any rights or obligations of the parties hereto, shall be governed by and resolved in accordance with the laws of the Commonwealth of Virginia."  ECF No. 35-2, at 1-2.  The choice of forum provision provides that "the sole jurisdiction and venue for any litigation arising from or in any way relating to this Agreement . . . will be in an appropriate federal or state court located in Norfolk, Virginia." Id. at 2.

After several months of adjustments, What Hurts decided to remove the Upgraded Lower Units and reinstall the Original Lower Units.[10]  According to What Hurts, it was only after the Original Lower Units were reinstalled on the Vessel that it learned that Volvo Penta was discontinuing the Seven Marine brand.  What Hurts purportedly "never [would have] agreed to Replacement Engines from Seven Marine" had it known that fact.  ECF No. 61 ¶ 81.

On November 29, 2021, the Vessel was taken on a sea trial equipped with the Replacement Engines and Original Lower Units. Volvo Penta considered the sea trial a success, but What Hurts did not.  By June of 2022, several months after the sea trial, What Hurts removed and sold the Replacement Engines and Original Lower Units and replaced them with Mercury brand marine engines.  This suit followed.

### D. Procedural Background

On July 27, 2022, What Hurts filed its Complaint in the United States District Court for the Southern District of Florida.  ECF No. 1.  The suit was then transferred to this Court pursuant to 28 U.S.C. § 1404(a) and the forum-selection clause in the Release. ECF No. 13 (citing ECF Nos. 1-2).  Once the case was transferred, Volvo Penta filed a motion to dismiss, ECF No. 18, and What Hurts

---

[10] This work appears to have been completed by Man O' War.  See ECF No. 54-9 (showing emails between Volvo Penta and Man O' War regarding What Hurts's decision to reinstall the Original Lower Units); see also ECF No. 54 ¶ 32; ECF No. 61 ¶ 32.

thereafter filed an amended complaint, ECF No. 35, to which Volvo Penta filed an answer, ECF No. 38.

What Hurts's Amended Complaint states three theories of relief: Actual Fraud (Count I); Fraudulent Concealment (Count II); and Breach of Express Warranty (Count III).  ECF No. 35.  What Hurts seeks "damages, prejudgment interest, all costs, and attorneys' fees as well as punitive damages."  Id. at 11.

On October 11, 2023, Volvo Penta moved for summary judgment on all three claims.  ECF No. 53.  What Hurts filed an opposition brief on October 31, 2023, and Volvo Penta filed a reply on November 10, 2023.  ECF Nos. 61, 62.  A summary judgment hearing was held on December 5, 2023.  Accordingly, Volvo Penta's summary judgment motion is fully briefed, argued, and ripe for review.

## II. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that a district court shall grant a motion for summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247-48 (1986).  "A genuine question of material fact exists where, after reviewing

the record as a whole, a court finds that a reasonable [fact finder] could return a verdict for the nonmoving party." <u>Dulaney v. Packaging Corp. of Am.</u>, 673 F.3d 323, 330 (4th Cir. 2012).

The initial burden on summary judgment falls on the moving party, but once a movant properly presents evidence supporting summary judgment, the nonmoving party may not rest upon the mere allegations of the pleadings, but instead must set forth specific facts in the form of exhibits and sworn statements illustrating a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24 (1986). To successfully defeat a motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," or the "existence of a scintilla of evidence." <u>Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.</u>, 330 F. Supp. 2d 668, 671 (E.D. Va. 2004) (citations omitted).

Although the Court is not to weigh evidence or make credibility determinations at the summary judgment phase, the Court is required to "determine whether there is a genuine issue for trial." <u>Tolan v. Cotton</u>, 572 U.S. 650, 656 (2014) (quoting <u>Anderson</u>, 477 U.S. at 249). When assessing whether there is a genuine issue for trial, the Court must determine whether there is "sufficient disagreement to require submission to a [fact finder] or whether [the evidence] is so one-sided that one party must prevail as a matter of law." <u>McAirlaids, Inc. v. Kimberly-Clark</u>

8

Corp., 756 F.3d 307, 310 (4th Cir. 2014) (quoting Anderson, 477 U.S. at 251-52). In making its determination, "the district court must view the evidence in the light most favorable to the nonmoving party." Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 568 (4th Cir. 2015) (cleaned up).

## III. DISCUSSION

Before addressing Volvo Penta's summary judgment arguments, the Court must consider two threshold issues: (1) the source of this Court's jurisdiction; and (2) which choice-of-law rules and substantive law apply. Then, the Court will consider the parties' summary judgment arguments as they relate to each of What Hurts's claims.

### A. Jurisdiction

Though neither party has challenged this Court's jurisdiction, the Court has an "independent obligation" to ensure that subject matter jurisdiction exists. Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). What Hurts filed its Amended Complaint "in admiralty," but it is not readily apparent that every claim falls within this Court's original admiralty jurisdiction. At the summary judgment hearing, the parties proffered that the Release is a "maritime contract" which provides the Court with original jurisdiction in admiralty over the breach of express warranty claim. The parties agreed that the Court lacks original admiralty jurisdiction over the two fraud claims but asserted that the Court

has original diversity jurisdiction or supplemental jurisdiction over both claims. The Court largely agrees with the parties and finds that it has original admiralty jurisdiction over the breach of express warranty claim and supplemental jurisdiction over the fraud claims.

Federal courts have original and exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1); see U.S. Const. art. III, § 2, cl. 1 ("The judicial power shall extend to . . . all Cases of admiralty and maritime Jurisdiction"). Contract disputes fall within federal courts' original admiralty jurisdiction if the nature or subject matter of the contract is maritime. But the boundary between maritime and nonmaritime contracts has long been difficult to draw. Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 23-24 (2004); accord Barna Conshipping, S.L. v. 2,000 Metric Tons, More or Less, of Abandoned Steel, 410 F. App'x 716, 722 (4th Cir. 2011).

Contracts for repair, alteration, or reconstruction of a vessel which, before such work, was actively engaged in maritime commerce or navigation, generally are considered maritime contracts. See N. Pac. S. S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co., 249 U.S. 119, 127-28 (1918); accord Kossick v. United Fruit Co., 365 U.S. 731, 735-36 (1961); see also Little Beaver Enters. v. Humphreys Rys., Inc., 719 F.2d 75, 77-78 (4th Cir. 1983) (applying admiralty law to a contract to replace the

10

steering system of a vessel); Southworth Mach. v. F/V Corey Pride, 994 F.2d 37, 40 n.3 (1st Cir. 1993) (finding that a contract involving the sale and installation of a used engine on a vessel is a maritime contract). By contrast, contracts to build a ship, or contracts involving work performed on a non-maritime object, are not maritime. Kossick, 365 U.S. at 735; see also Hall Bros., 249 U.S. at 127-29 (explaining that maritime jurisdiction over a vessel does not begin until the vessel has been completed and launched on navigable waters). Any uncertainties that arise in distinguishing between repairs on a vessel already in navigation (maritime) and new vessel construction (non-maritime) are resolved in favor of admiralty jurisdiction. New Bedford Dry Dock Co. v. Purdy, 258 U.S. 96, 99-100 (1922).

At the summary judgment hearing, the parties confirmed that the Vessel was fully constructed and had been launched in navigable waters before What Hurts signed the Release. Having been actively engaged in maritime navigation, the Vessel was, for purposes of this Court's admiralty jurisdiction, a "vessel" before the Release was executed. See Hall Bros., 249 U.S. at 127-29. Though the Release involves a waiver of liability, it is ultimately a contract for the modification of a "vessel," and therefore, it is properly considered a maritime contract. See, e.g., Glover v. Hryniewich, No. 2:17cv109, 2022 WL 4542251, at *4 (E.D. Va. Sep. 28, 2022) (contract to replace engines of vessel constitutes a maritime

contract); accord 1 Thomas J. Shoenbaum, Admiralty & Maritime Law
§ 3-10 (6th ed. 2018) (hereinafter "Shoenbaum").

However, the inquiry does not end there as this is not a
simple breach of contract action, but rather, an action for breach
of an express warranty (Count III).  Ordinarily, warranty claims
do not fall within a federal court's original admiralty
jurisdiction because they are often grounded in nonmaritime
contracts, such as contracts for the sale of a vessel.  See E.
River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 872
n.7 (1986) (noting that breach of warranty claims grounded in
construction or materials contracts are not within federal courts'
original admiralty jurisdiction).  In this case, however, the
parties agreed in the Release to create a new limited warranty as
part of their agreement to alter the Vessel's engines.  See ECF
No. 35-2; see also ECF No. 54 ¶ 24; ECF No. 61 ¶ 83.  Because the
Limited Warranty was created by and is grounded in a maritime
contract (the Release), Count III's breach of express warranty
claim properly falls within this Court's original admiralty
jurisdiction.  See 1 Shoenbaum § 3-11; see also Berge Helene Ltd.
v. GE Oil & Gas, Inc., 896 F. Supp. 2d 582, 595 (S.D. Tex. 2012)
("Disputes over warranties arising from [maritime] contracts also
fall within maritime jurisdiction").

As to the fraud claims, the parties agree, as does this Court,
that neither the actual fraud nor the fraudulent concealment claims

fall within this Court's original admiralty jurisdiction.  Simply put, neither claim "occurred on navigable waters or [was] caused by a vessel on navigable water," so neither tort claim can fall within this Court's original admiralty jurisdiction.  See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995) (setting forth the test for original admiralty jurisdiction over tort claims); see also Mayor & City Council v. BP P.L.C., 31 F.4th 178, 227 n.19 (4th Cir. 2022) (if one criterion for original admiralty jurisdiction is absent, the Court need not assess the other criteria).

Though the Court lacks original admiralty jurisdiction over the fraud claims, both parties assert that the Court has original diversity jurisdiction over such claims.  For diversity jurisdiction, the amount in controversy must exceed $75,000 and the parties must be completely diverse.  28 U.S.C. § 1332(a).  In the Amended Complaint, Plaintiff seeks damages exceeding $500,000, so the amount in controversy requirement is satisfied.  However, Volvo Penta has not presented sufficient facts for the Court to determine whether the parties are completely diverse.[11]

---

[11] "[A] limited liability company is assigned the citizenship of its members." Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 120 (4th Cir. 2004); accord Travellers Indem. Co. of Am. v. Portal Healthcare Sols., L.L.C., 644 F. App'x 245, 246 (4th Cir. 2016).  Though the Amended Complaint posits that all of Volvo Penta's members are Delaware or Virginia citizens, there is no evidence in the summary judgment record upon which the Court can determine the citizenship of Volvo Penta's members.  See generally ECF No. 35.

Regardless, under 28 U.S.C. § 1367(a), the Court generally may exercise supplemental jurisdiction over any claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Based on the allegations in the Amended Complaint, as well as the parties' statements in their summary judgment briefing and at oral argument, the Court concludes that What Hurts's fraud claims arise out of the same events – execution of the Release and subsequent issues with the Replacement Engines and Upgraded Lower Units – as What Hurts's breach of express warranty claim. Because What Hurts's claims share a "common nucleus of operative fact," the Court finds that it has supplemental jurisdiction over What Hurts's fraud claims. United Mine Workers v. Gibbs, 388 U.S. 715, 725 (1966).

### B. Choice of Law

Because the Court has subject matter jurisdiction in admiralty, federal maritime choice-of-law principles apply in determining whether to apply federal or state substantive law to the breach of express warranty claim. Sing Fuels Pte ltd. v. M/V Lila Shanghai, 39 F.4th 263, 270 (4th Cir. 2022). When parties have included a choice of law provision in their contract, courts sitting in admiralty will enforce that clause unless there is a compelling public policy reason for not doing so. Triton Marine

Fuels Ltd., S.A. v. M/V Pac. Chukotka, 575 F.3d 409, 413 (4th Cir. 2009).

In this case, the parties agreed in the Release that all questions concerning the validity, interpretation, and performance of the Release "shall be governed by and resolved in accordance with the laws of the Commonwealth of Virginia." ECF No. 35-2, at 2. As both parties agree that this choice-of-law provision should apply, and nothing in the record indicates that there is a compelling public policy reason to warrant non-enforcement, the Court will apply Virginia substantive law to the breach of express warranty claim.

As to the fraud claims, a court exercising supplemental jurisdiction over state law claims applies the choice of law rules of the forum state. See Snow v. WRS Grp., Inc., 73 F. App'x 2, 3 (5th Cir. 2003); see also Berlin v. Jetblue Airways Corp., 436 F. Supp. 3d 550, 564 (E.D.N.Y. 2020). But when a party transfers a case pursuant to 28 U.S.C. § 1404(a), as Volvo Penta has in this case, the transferee court must apply the choice-of-law rules of the transferor court. See Ferens v. John Deere Co. Accordingly, the Court applies Florida choice-of-law principles. As to tort claims, Florida applies the law of the state with the "most significant relationship" to the occurrence. Bishop v. Florida Specialty Paint Co., 389 So.2d 999, 1000-01 (Fla. 1980). In applying this test, the Court should consider:

15

> (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; (d) and the place where the relationship, if any, between the parties is centered.

Grupo Televisa, S.A. v. Telemundo Commc'n Grp., Inc., 485 F.3d 1233, 1240 (11th Cir. 2007) (quoting Restatement (Second) of Conflicts of Laws § 145(2)).  In cases involving fraud, "the place of injury does not play so important a role for choice-of-law purposes."  Restatement (Second) Conflict of Laws § 145, cmt. f.

Here, What Hurts is alleging that it would not have signed the Release had it known about Volvo Penta's alleged misrepresentations and omissions.  These claims arise out of the parties' contractual relationship, which, by its terms, was centered in Virginia, given that the Release was entered into in Virginia and included a Virginia choice of law provision.  ECF No. 35-2, at 1; see also Merriman v. Convergent Bus. Sys., Inc., No. 90-30138-LAC, 1993 WL 989418, at *9 (N.D. Fla. June 23, 1993) (applying Florida's substantial relationship test and concluding that the location where the contract was centered had the most substantial relationship to Plaintiff's fraud claims).  What Hurts is an Ohio LLC, but Volvo Penta's members are unknown, so the location of the parties does not point more strongly to a location other than Virginia.  ECF No. 35 ¶¶ 1-2.  Ultimately, with the parties' agreement, the Court finds that Virginia has the most

16

substantial relationship to What Hurts's fraud claims, and the Court will apply Virginia substantive law to such claims.[12]

## C. Counts I and II: Actual Fraud and Fraudulent Concealment

With jurisdiction and choice of law settled, the Court turns to the merits of Volvo Penta's summary judgment motion.  As the Virginia Supreme Court has observed, a "charge of fraud is one easily made . . . [but] [f]raud cannot be presumed."  Redwood v. Rogers, 105 Va. 155, 158, 53 S.E. 6, 7 (1906).  Under Virginia law, regardless of the theory of fraud, the plaintiff must ultimately "prove by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled."  State Farm Mut. Auto. Ins. Co. v. Remley, 270 Va. 209, 218, 618 S.E.2d 316, 321 (2005) (quoting Prospect Dev. Co. v. Bershader, 258 Va. 75, 85, 515 S.E.2d 291, 297 (1999)); see also Van Deusen v. Snead, 247 Va. 324, 327-29, 441 S.E.2d 207, 209-10 (1994) (discussing the same elements with respect to fraudulent concealment).

---

[12] If the Court later determines that it has original diversity jurisdiction over What Hurts's fraud claims, this choice of law analysis will be unchanged, as a federal court sitting in diversity likewise applies the choice-of-law rules of the forum state.  See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); see also Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941).

### 1. Count I: Actual Fraud

In Count I, What Hurts alleges that Volvo Penta made multiple fraudulent representations "in an effort to induce the swap of product with no cash." ECF No. 61, at 23. Though What Hurts did not clearly identify the fraudulent statements at issue in its briefing, at the summary judgment hearing, What Hurts identified three alleged misstatements as the basis of its actual fraud claim. These include: (1) Kelleher's statement that he would "arrange for an application review to ensure the [Upgraded Lower Units] would work on [the Vessel][;]" (2) Kelleher's oral confirmation on two separate occasions "that the application[13] would work with our particular Vessel[;]" and (3) Kelleher's text on March 2, 2021.[14] See ECF No. 61-1 ¶¶ 22, 25, 29; ECF No. 61, at 23.[15]

Volvo Penta argues that none of the identified statements are statements of material fact. But even if some of the statements are statements of material fact, Volvo Penta argues that What Hurts

---

[13] Consistent with the parties' wording, the Court uses "the application" to refer to the use of the Replacement Engines with the Upgraded Lower Units on the Vessel.

[14] Kelleher's March 2, 2021, text stated: "I've got [to] tell you we have had a lot of success with the DPH drives . . . the hole shot is better fuel efficiency is better and maneuverability is better particularly at low speed. If it was my Boat I would go with a DPH but it's yours it's your choice I'd advise you to reconsider." ECF No. 54-5.

[15] Though all of the statements at issue were made by Kelleher, neither party contends that any of these statements cannot be properly attributed to Volvo Penta. See Jefferson Standard Life Ins. Co. v. Hendrick, 181 Va. 824, 833, 27 S.E.2d 198, 201 (1943) (statements made by an individual as agent and representative of his employer were actionable against the agent's employer).

18

has identified no evidence capable of demonstrating that Volvo Penta <u>knowingly and intentionally</u> made a false statement of material fact.  The Court considers each argument in turn.

### a. Statement of Material Fact

Under Virginia law, fraud claims "must relate to a present or a pre-existing fact." <u>McMillion v. Dryvit Sys., Inc.</u>, 262 Va. 463, 471, 552 S.E.2d 364, 368 (2001) (citations omitted). Accordingly, an action based on fraud ordinarily cannot be predicated on statements about future events, or the expression of an opinion. <u>Sales v. Kecoughtan Housing Co.</u>, 279 Va. 475, 481, 690 S.E.2d 91, 94 (2010).  Expressions of opinion "however strong and positive the language may be" are not statements of present fact. <u>Montarino v. Consultant Eng'g Servs., Inc.</u>, 251 Va. 289, 293, 467 S.E.2d 778, 781 (1996) (quoting <u>Saxby v. Southern Land Co.</u>, 109 Va. 196, 198, 63 S.E. 423, 424 (1909)).  This is so because, simply put, "a [person] is not justified in placing reliance on [such statements]." <u>Id.</u>

Relatedly, "a mere promise to perform an act in the future is not, in a legal sense, a representation, and a failure to perform it does not change its character." <u>Patrick v. Summers</u>, 235 Va. 452, 454, 369 S.E.2d 162, 164 (1988).  "Were the general rule otherwise, every breach of contract could be made the basis of an action in tort for fraud." <u>Blair Const., Inc. v. Weatherford</u>, 253 Va. 343, 347, 485 S.E.2d 137, 139 (1997) (quoting <u>Lloyd v. Smith</u>,

150 Va. 132, 145, 142 S.E. 363, 365 (1928)).  But if a defendant makes a promise that, <u>when made</u>, they have no intention of performing, then that promise is considered a misrepresentation of present fact.  <u>Supervalu, Inc. v. Johnson</u>, 276 Va. 356, 368, 666 S.E.2d 335, 368 (2008).

There is no "bright line test to ascertain whether false representations constitute matters of opinion or statements of fact."  <u>Montarino</u>, 251 Va. at 293, 467 S.E.2d at 781.  Instead, courts determine whether a representation is a statement of fact on a case-by-case basis, "taking into consideration the nature of the representation and the meaning of the language used as applied to the subject matter and as interpreted by the surrounding circumstances."  <u>Sales</u>, 279 Va. at 481, 690 S.E.2d at 94-95 (quoting <u>Packard Norfolk, Inc. v. Miller</u>, 198 Va. 557, 562, 95 S.E.2d 207, 211 (1956)).

Measured against this framework, the Court finds that Kelleher's statement that he would arrange for an application review to ensure that the Upgraded Lower Units would work on the Vessel is not an actionable statement of material fact.  This statement is a statement of future performance, and accordingly, it is not actionable as fraud unless What Hurts identifies evidence in the record capable of demonstrating that Kelleher made this statement with no intention of following through.  <u>See</u> <u>Supervalu</u>, 276 Va. at 368, 666 S.E.2d at 342.  But What Hurts has identified

no such evidence (nor made any such allegation). _See_ _Colonial_
_Ford Truck Sales, Inc. v. Schneider_, 228 Va. 671, 677, 325 S.E.2d
91, 94 (1985). In fact, the record is devoid of direct or
circumstantial evidence suggesting that Kelleher did not intend to
follow through on this promise at the time when it was allegedly
made. _See_ _Richmond Metro. Auth. v. McDevitt St. Bovis, Inc._, 256
Va. 553, 559-60, 507 S.E.2d 344, 348 (1998); _see also_ _Enomoto v._
_Space Adventures Ltd._, 624 F. Supp. 2d 443, 454-55 (E.D. Va. 2009).
Accordingly, the Court finds that this statement is not actionable
as fraud.

Similarly, the portion of Kelleher's text on March 2, 2021,
which said "[i]f it was my Boat I would go with a DPH," is a
statement of opinion which cannot be actionable as fraud. ECF No.
54-5; _see also_ _Saxby_, 109 Va. at 198, 63 S.E. at 424 ("The mere
expression of an opinion, however strong and positive the language
may be, is no fraud."). What Hurts does not appear to offer any
specific argument that this portion of Kelleher's text is a fact
rather than an opinion, and the Court finds that this portion of
Kelleher's text is not actionable as fraud.

### b. Knowing and Intentional Misstatement

Having concluded that some of What Hurts's identified
statements are not actionable statements of material _fact_, the
Court considers whether What Hurts has sufficiently alleged that
the remaining statements – portions of Kelleher's text on March 2,

21

2021, and Kelleher's confirmation (twice) that the application would work on the Vessel – were knowingly and intentionally made. What Hurts contends that Volvo Penta made these alleged misstatements of fact knowing and intending for them to be false because Volvo Penta "did not want to pay cash to [What Hurts] and desired a product swap." ECF No. 61-1 ¶ 13; see ECF No. 61, at 24. Additionally, What Hurts alleges that Volvo Penta was under significant financial pressure to settle, given What Hurts's proffer that it would be entitled to over $600,000 in money damages related to the issues with the Original Engines. These assertions, combined with the "fact" that Volvo Penta made "known false statements," are sufficient, according to What Hurts, for a reasonable fact finder to infer that Volvo Penta made knowing and intentional false statements.[16] See ECF No. 61, at 24.

Volvo Penta, by contrast, asserts that even after extensive discovery, What Hurts has failed to introduce sufficient proof to allow a reasonable fact finder to reasonably conclude by clear and convincing evidence that Volvo Penta made any statement knowing and intending for it to be false. The Court agrees.

Starting with Kelleher's text on March 2, 2021, the Court finds that Volvo Penta has carried its burden to demonstrate that no reasonable jury could find that Kelleher's text contains knowing

---

[16] Though a little unclear, What Hurts appears to argue that because Volvo Penta allegedly made false statements, it is inferable without additional proof that it did so knowingly and intentionally.

and intentional false statements. As a reminder, Kelleher told Grammas that Volvo Penta "had a lot of success with the DPH drives . . . DPH is the standard because the hole shot is better[,] fuel efficiency is better[,] and maneuverability is better." ECF No. 54-5. In support of its motion for summary judgment, Volvo Penta introduced an affidavit indicating that this information is correct. More specifically, the affidavit specified that Volvo Penta had used the same model of Seven Marine engines with the same model of DPH upgraded lower units "on numerous occasions on a variety of other vessels with great success." ECF No. 54-1 ¶ 23; see ECF No. 54, at 21.

What Hurts introduced no evidence to dispute these factual assertions. Instead, What Hurts relies on Grammas's affidavit that, in the context of his prior conversations with Kelleher, Grammas interpreted Kelleher's text on March 2, 2021, to refer specifically to his model of Midnight Express vessel. ECF No. 61-1 ¶¶ 29–30. Though Grammas understood Kelleher's text to refer specifically to the Vessel, that understanding does not transform Kelleher's text into an actionable fraudulent statement. Indeed, What Hurts has introduced no credible evidence that Kelleher made the statement knowing and intending for it to be false. See Cohn v. Knowledge Connections, Inc., 266 Va. 362, 368, 585 S.E.2d 578, 582 (2003). Accordingly, What Hurts has failed to demonstrate

that Kelleher's text on March 2, 2021, satisfies the requisite elements for actual fraud.

As to Kelleher's repeated verbal confirmation that the application would work on the Vessel, the Court finds that What Hurts has failed to identify sufficient facts for a reasonable fact finder to conclude that Kelleher had fraudulent knowledge or intent. What Hurts's brief does not advance any specific arguments concerning Kelleher's knowledge or intent with respect to these statements, so the Court considers What Hurts's generalized arguments concerning knowledge and intent to address whether these background facts could create an inference sufficient to support What Hurts's theory. These include: (1) Volvo Penta was under financial pressure to settle potential claims related to the Original Engines; (2) Volvo Penta wanted to provide a product swap rather than a cash payment; and (3) Volvo Penta made false statements, which indicates that Kelleher's statements were made intentionally and knowingly. See ECF No. 61, at 24.

First, What Hurts has introduced no evidence beyond its own conclusory assertions that Volvo Penta was under financial pressure to settle any claims related to the Original Engines. ECF No. 61, at 24; see Noell Crane Sys. GmbH v. Noell Crane & Serv., Inc., 677 F. Supp, 2d 852, 872 (E.D. Va. 2009) ("Conclusory statements are insufficient to establish the elements necessary for fraud."). In fact, as Volvo Penta points out, the original

24

limited warranty restricted Volvo Penta's obligation to <u>repair or replacement</u> of the Original Engines in the event of a product defect.  Though this fact appears to contradict What Hurts's general allegation of financial pressure, What Hurts does not make any effort to undercut the effect of this original remedy limitation.  <u>See</u> ECF No. 35-1, at 1, 4; ECF No. 62, at 7.

Second, while there appears to be some support for What Hurts's assertion that Volvo Penta preferred a product swap, one cannot reasonably infer from a mere preference that Volvo Penta knowingly and intentionally made false statements to induce What Hurts to sign the Release.  Indeed, as referenced before, it otherwise appears that the original limited warranty restricted What Hurts to repair or replacement of the engines.  <u>See also</u> ECF No. 62, at 7.  Finally, allegations of false statements, without more, are insufficient proof of knowledge or fraudulent intent. <u>See</u> <u>Cyberlock Consulting, Inc. v. Info. Experts, Inc.</u>, 876 F. Supp. 2d 672, 681 (E.D. Va. 2012).

At the hearing on this motion, What Hurts encouraged the Court to consider the absence of proof that application reviews were conducted as clear and convincing evidence that Kelleher made knowing and intentional misstatements regarding the application of the Replacement Engines and Upgraded Lower Units on the Vessel. However, given the clear and convincing evidentiary standard for finding each element of actual fraud, even considered in

combination with What Hurts's other factual assertions regarding knowledge and intent, the Court concludes that one cannot reasonably infer fraudulent knowledge or intent from the ultimate failure to conduct application reviews.

Accordingly, because What Hurts has not identified admissible evidence capable of meeting the "clear and convincing" evidentiary standard of proof required to support its allegation that Volvo Penta made knowing and intentional misstatements, there is no genuine dispute of material fact as to whether What Hurts has sufficiently alleged its actual fraud claim. Volvo Penta's motion for summary judgment on this claim is therefore **GRANTED**.

### 2. Count II: Fraudulent Concealment

In Count II, What Hurts alleges that Volvo Penta fraudulently concealed two facts: (1) that the Seven Marine brand would be discontinued; and (2) that Volvo Penta had not tested the application of the Replacement Engines with the Upgraded Lower Units on the Vessel or any Midnight Express vessel. ECF No. 61, at 26–27.

Under Virginia law, "[c]oncealment of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud." Bank of Montreal v. Signet Bank, 193 F.3d 818, 827 (4th Cir. 1999) (quoting Allen Realty Corp. v. Holbert, 227 Va. 441, 450, 318 S.E.2d 592, 597 (1984)). However, silence does not constitute concealment

unless there is a <u>duty to disclose</u>. <u>Id.</u> at 829. A duty to disclose ordinarily does not arise when the parties are engaged in an arms-length transaction. But a duty may arise:

> (1) if the fact is material and the one concealing has superior knowledge and knows the other is acting upon the assumption that the fact does not exist; or (2) if one party takes actions which divert the other party from making prudent investigations (e.g., by making a partial disclosure) . . . . Obviously, the concealment itself cannot constitute one of these diversionary actions — then there would always be a duty to disclose.

<u>Id.</u> (citations omitted). A duty to disclose may also arise if there is a confidential or fiduciary relationship between the parties, or if disclosure "would be necessary to clarify information already disclosed, which would otherwise be misleading." <u>Doe ex rel. Doe v. Baker</u>, 299 Va. 628, 656, 857 S.E.2d 573, 590 (2021) (citations omitted). If a plaintiff successfully shows that the defendant had a duty to disclose, then the plaintiff still must show "actual intent to conceal a fact[;]" reckless non-disclosure is insufficient. <u>White v. Potocksa</u>, 589 F. Supp. 2d 631, 642 (E.D. Va. 2008).

### a. Closure of Seven Marine

What Hurts contends that Volvo Penta engaged in fraudulent concealment when it failed to disclose to What Hurts that Seven Marine, the brand name on the Replacement Engines, Original Engines, and Original Lower Units, would be discontinued. ECF No. 61, at 26. What Hurts claims that it never would have agreed to

settle for Replacement Engines had it known that the brand would be discontinued. Id. at 27.

Volvo Penta argues that it had no duty to disclose this information because there is no evidence that it knew that What Hurts was acting upon the assumption that the Seven Marine brand would continue. ECF No. 62, at 8. Moreover, Volvo Penta argues, there is no evidence to suggest that it deliberately withheld information or took steps to prevent What Hurts from asking about or discovering the relevant information. ECF No. 54, at 22-23.

Considering the duty to disclose issue first, even assuming that the status of Seven Marine's future was a "material fact," What Hurts has not introduced evidence on which a reasonable fact finder could rely to find that Volvo Penta had a duty to disclose this information. Indeed, What Hurts has introduced no evidence to suggest that Volvo Penta knew that What Hurts was "acting under the assumption" that Seven Marine would continue to exist, and thus Volvo Penta has carried its burden and is entitled to summary judgment on this issue.

But even if Volvo Penta had a duty to disclose this information, summary judgment would still be proper because What Hurts has not identified any evidence beyond mere speculation that Volvo Penta made "a knowing and a deliberate decision not to disclose" this information. See Norris v. Mitchell, 255 Va. 235, 240, 495 S.E.2d 809, 812 (1998). Nor are there any allegations in

28

the Amended Complaint or the parties' summary judgment briefing that Volvo Penta took steps to conceal the closure of the Seven Marine brand. See NorthStar Aviation, LLC v. Alberto, 332 F. Supp. 3d 1007, 1019 (E.D. Va. 2018). In fact, the closure had previously been publicly announced several months prior. See ECF 54-3, at 2 (announcing the "phasing out" of production of Seven Marine engines and cessation of sales and marketing in November 2020). Accordingly, Volvo Penta has carried its burden to demonstrate that it is entitled to summary judgment on Count II as it relates to the closure of Seven Marine.

### b. Failure to Test Replacement Engines with Upgraded Lower Units

What Hurts next contends that Volvo Penta failed to disclose: (1) that it had never tested the application of the Replacement Engines with the Upgraded Lower Units on the Vessel or any other Midnight Express vessel; and (2) that "Plaintiff would be stuck with the original configuration that already plagued the Vessel" if the Replacement Engines and Upgraded Lower Units did not work well together. ECF No. 61, at 26.[17]

By way of response, Volvo Penta again argues that it had no duty to disclose this information. ECF No. 62, at 9. For the same reasons discussed at length above with respect to the closure

---

[17] The Court observes that these factual assertions are the full extent of What Hurts's argument that it satisfies the elements for fraudulent concealment as to this category of information. See ECF No. 61, at 25-26.

of Seven Marine, Volvo Penta has demonstrated that there is insufficient record evidence for What Hurts to establish that Volvo Penta knew that What Hurts was "acting upon the assumption" that the engine application had been tested on the Vessel, or that it would have alternative options if the application was unsuccessful.[18]   See Bank of Montreal, 193 F.3d at 827.   Nor is there any evidence in the record beyond mere speculation that Volvo Penta made "a knowing and a deliberate decision not to disclose" this information.   See Norris, 255 Va. at 240, 495 S.E.2d at 812.

Without any evidence to support What Hurts's contention that Volvo Penta had a duty to disclose this information, let alone that Volvo Penta made a knowing decision to withhold this information, the Court concludes that Volvo Penta has carried its burden and is entitled to summary judgment as a matter of law. The Court therefore **GRANTS** Volvo Penta's summary judgment motion as to Count II.

### D. Count III: Breach of Express Warranty

In Count III, What Hurts alleges that Volvo Penta breached several of the written express warranties contained in the Limited Warranty.   ECF No. 61, at 27-28.   Under the challenged written warranties, Volvo Penta promised: (1) that the Replacement Engines and Upgraded Lower Units would be "free from defects in material

---

[18] Nor, for that matter, has What Hurts demonstrated that alternative options within the Volvo Penta line did not exist.

and workmanship for the period of time stated herein;" and (2) that it would "repair[] a defective part [or] replac[e] such part or parts."  ECF No. 35-1, at 1; see ECF No. 35 ¶¶ 60-68.  In addition to these written promises, What Hurts alleges that Kelleher made several oral representations that became express warranties as a matter of law.  ECF No. 61, at 27; see also ECF No. 61-1 ¶¶ 25, 29.

Volvo Penta argues that it is entitled to summary judgment on Count III for three reasons: (1) What Hurts's claim does not arise under the Limited Warranty because Volvo Penta had no warranty obligations related to the compatibility of the Replacement Engines and Upgraded Lower Units;[19] (2) What Hurts did not provide adequate notice or an opportunity to cure any alleged breach of warranty; and (3) What Hurts is barred from recovering any damages.

Under Virginia law, a plaintiff seeking to recover for a breach of warranty must ultimately prove: (1) the existence of a warranty; and (2) a breach of that warranty.  Hitatchi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 624 (4th Cir. 1999) (citing Collier v. Rice, 233 Va. 522, 524-25, 356 S.E.2d 845, 847 (1987)).

---

[19] Initially, Volvo Penta also argued that the Limited Warranty did not become effective until after the successful sea trial in November of 2021.  ECF No. 62, at 11.  However, at the summary judgment hearing, Volvo Penta conceded, at least for the purpose of summary judgment, that the Limited Warranty began to run on April 8, 2021.  See ECF No. 61-2 (highlighting the provision in the Limited Warranty stating that it would begin to run no later than April 8, 2021).

Here, assessing the existence of a warranty begins with an analysis of the Release.

Because the Release predominantly concerns the transfer of title over certain engines from Volvo Penta to What Hurts for a price of $10,000, the parties agree that this transaction is governed by the Virginia Uniform Commercial Code ("UCC"). See Va. Code §§ 8.2-105, 106. Under the Virginia UCC, an express warranty may be created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." Va. Code § 8.2-313(1). This broad language is subject to the limitations set forth in Virginia Code § 8.2-202, governing the admissibility of parol evidence.

In light of the parties' dispute over whether certain oral statements allegedly made by Kelleher created an express warranty, the Court will first address whether the parol evidence rule prohibits What Hurts from introducing evidence of oral warranties. In doing so, the Court will determine whether What Hurts's complaints conceivably fall within the scope of what Volvo Penta warranted. Then, the Court will consider Volvo Penta's arguments regarding proper notice and damages.

### 1. Volvo Penta's Warranty Obligations

#### a. Parol Evidence

Section 8.2-202 of the Virginia Code provides that a document intended by the parties as a _final_ expression of their agreement

32

may not be contradicted by evidence of any prior agreement. Va. Code § 8.2-202. Though contradiction of a final written agreement is prohibited, the parties can introduce evidence of "consistent additional terms" unless the Court finds that the parties also intended for the document to be the complete expression of their agreement. Id. § 8.2-202(b). Stated simply, an agreement can be "final" without being "complete," and both findings have legal significance for determining whether and to what extent evidence of additional terms can be introduced. For example, when an agreement is "final" and "complete" neither party can introduce parol evidence of additional terms. But if the agreement is "final" but not "complete" because some terms remain unwritten, then either party can introduce evidence of additional consistent terms.[20] See id. § 8.2-202.

Turning first to finality, a "final" agreement is one which is intended to be legally binding. See David Frisch, Lawrence's Anderson on the Uniform Commercial Code § 2-202.37 (3d ed. 2022) (hereinafter "Anderson on the Uniform Commercial Code"). In this case, the parties appear to agree that the Release is the legally binding agreement between the parties. See ECF No. 61, at 19-20,

---

[20] The exception to this rule is that, if the Court finds that the alleged additional terms are such that, had they been agreed upon, the parties certainly would have included them in writing, then the Court may not consider proffered evidence of additional consistent terms. Va. Code § 8.2-202 cmt. 3. As neither party has invoked this exception, the Court does not address its potential applicability.

¶ 83; ECF No. 54, at 14.[21]  Moreover, neither party has introduced evidence upon which a reasonable fact finder could conclude that the Release was not intended as the final agreement between the parties.  The Court thus concludes that the Release is final, and neither party may introduce parol evidence which contradicts its terms.

Though the Release is final, that does not mean it is necessarily complete.  See Va. Code § 8.2-202 cmt. 1(a) (explaining that the UCC rejects any assumption that because a writing is final it is necessarily complete).  Virginia law does not provide a clear test for determining whether a contract governed by the UCC is considered "complete."  In some cases, the presence of an effective merger clause stating that the contract is the complete agreement between the parties appears to be near-conclusive proof that an agreement is "complete."  See Hoffman v. Daimler Trucks North America, LLC, 940 F. Supp. 2d 347, 355 (W.D. Va. 2013) (finding that parol evidence of oral warranties was not admissible because there was an effectively worded merger clause in the parties' agreement); see also King Industries, Inc. v. Worldco Data Systems, Inc., 736 F. Supp. 114, 118 (E.D. Va. 1989) ("[O]ral statements [that constituted an express warranty] would not be

---

[21] What Hurts notes that the Release may not be binding in the event of fraud, but the Court grants Volvo Penta's summary judgment motion with respect to What Hurts's fraud claims, and What Hurts has advanced no other argument that the Release is not legally enforceable.

admissible to contradict or vary the disclaimer of express warranties clause."); Hill v. BASF Wyandotte Corp., 696 F.2d 287, 291 (4th Cir. 1982). But even with a merger clause, courts are encouraged to consider the totality of the circumstances to ascertain the parties' intent. See, e.g., Betaco, Inc. v. Cessna Aircraft Co., 32 F.3d 1126, 1132-33 (7th Cir. 1994) (explaining that the focus of the inquiry is on the intent of the parties and that courts should consider the writing itself, merger and integration clauses, disclaimer clauses, the nature and scope of prior negotiations, any alleged extrinsic terms, and the sophistication of the parties); Anderson on the Uniform Commercial Code § 2-202.39 (same).

Here, the parties have agreed that the Release does not contain a merger clause, and both have taken conflicting positions regarding the completeness of the Release without supporting their assertions by reference to evidence in the record. Put simply, the Court cannot determine as a matter of law at this phase that the Release reflects the complete and exclusive understanding between the parties. Because Volvo Penta has not carried its burden to demonstrate that the Release is complete, the Court will consider (for now) What Hurts's evidence of oral warranties.[22]

---

[22] At the summary judgment hearing, Volvo Penta argued that the Court must first find that the Release is "ambiguous" before considering parol evidence. However, the Court has found no support in Virginia law for the proposition that a party must first show that a final contract governed by the UCC is ambiguous before introducing evidence of consistent additional

### b. Creation of Additional Express Warranties

At the summary judgment hearing, What Hurts argued that certain statements made by Kelleher – (1) that the Replacement Engines and Upgraded Lower Units would work together on the Vessel; and (2) that Kelleher would arrange for an application review to ensure the Upgraded Lower Units would work on the Vessel – became express warranties as a matter of Virginia law.  ECF No. 61, at 23–24, 27.  Under Virginia Code § 8.2-313, a seller creates an express warranty "that the goods shall conform to the affirmation or promise" when it makes "[a]ny affirmation of fact or promise . . . to the buyer which relates to the goods and becomes part of the basis of the bargain."  Va. Code § 8.2-313(1)(a).  Ultimately, "[t]he issue whether a particular affirmation of fact made by the seller constitutes an express warranty is generally a question of fact."  Bayliner Marine Corp. v. Crow, 257 Va. 121, 127, 509 S.E.2d 499, 502 (1999).

In its motion for summary judgment, Volvo Penta argues that it is entitled to summary judgment on Claim III because its primary

---

terms.  Indeed, Virginia courts applying the common law parol evidence rule have not required a showing of ambiguity before considering evidence of additional consistent terms, and the Virginia UCC liberalized the common law parol evidence rule that already permitted this evidence.  See Jim Carpenter Co v. Potts, 255 Va. 147, 155-56, 495 S.E.2d 828, 833 (1998) (discussing the partial integration doctrine); see also 1 Sinclair on Virginia Remedies § 36-8 (2022) (explaining that Virginia Code § 8.2-202 "reflects a liberal approach to the introduction of parol evidence to explain or supplement written contracts for the sale of goods than was formerly followed in Virginia").

obligation under the Limited Warranty was to provide non-defective parts, and What Hurts has not offered sufficient proof that either the Replacement Engines or the Upgraded Lower Units were defective.[23]   ECF No. 54, at 26-27.   Instead, Volvo Penta argues, What Hurts has introduced evidence that the Replacement Engines and Upgraded Lower Units did not synchronize correctly, which does not relate to any written provision of the Limited Warranty.   Id.

However, What Hurts has offered evidence that Volvo Penta may have created an oral warranty that the Replacement Engines and Upgraded Lower Units would work together on the Vessel.[24]   Thus, to the extent that What Hurts can demonstrate the existence of an affirmative oral warranty, the remaining issue is whether What Hurts has offered sufficient evidence (at this stage) of breach of this warranty to survive summary judgment.   See Hitatchi Credit, 166 F.3d at 624.   The Court finds that it has, as What Hurts introduced various emails documenting ongoing water pressure issues in the months following installation of the Replacement

---

[23] What Hurts disputes this characterization and insists that its evidence is indicative of a product defect as well.   See ECF No. 61, at 27-28.   Though it is unclear to the Court what evidence would support a finding of a product defect, the Court need not decide this issue to resolve Volvo Penta's motion.

[24] As stated previously, a seller creates an express warranty when it makes "[a]ny affirmation of fact or promise . . . to the buyer which relates to the goods and becomes part of the basis of the bargain."   Va. Code § 8.2-313(1)(a).   What Hurts's position is that, based on Virginia Code § 8.2-313, the alleged statements by Kelleher that the application would work on the Vessel created an express warranty that the Replacement Engines and Upgraded Lower Units would, in fact, perform together on the Vessel.   ECF No. 61, at 24, 27.

Engines and Upgraded Lower Units.   See, e.g., ECF No. 61-7 (reporting a "low pressure alarm" on one of the engines); ECF No. 61-8 (reporting "constantly fluctuating water pressure"); ECF No. 61-16 (reporting ongoing water pressure alarms and that Volvo Penta "cannot resolve the issues they are experiencing").

Based on this showing, Volvo Penta has not carried its burden to demonstrate that there is no genuine issue of material fact as to whether What Hurts's claims conceivably fall within Volvo Penta's warranty obligations.  ECF No. 54, at 26.  Volvo Penta's motion for summary judgment on this basis is therefore **DENIED**.

### c. Expert Testimony

Volvo Penta separately argues that What Hurts cannot satisfy its burden of proof to establish breach of an express warranty because it did not timely disclose an expert witness and the time to do so has long since passed.  According to Volvo Penta, What Hurts's claims involve the "interplay of mechanical engineering, naval architecture [and] hydrodynamics," making expert testimony a prerequisite to establish, among other things, that any of the engines were defective.  ECF No. 54, at 14.  However, Volvo Penta has not identified, nor has the Court located, any caselaw that suggests that a plaintiff must produce expert testimony to establish the elements of breach of an express warranty.  See id. at 13-14.  Moreover, even if expert testimony were necessary to prove a "defect," nothing in the record suggests that expert

testimony would be necessary to prove a synchronization failure. What Hurts, for its part, argues that the record is "replete with admissions" by Volvo Penta that will establish the necessary elements for its breach of express warranty claim. ECF No. 61, at 17.

Ultimately, Volvo Penta has not carried its burden to demonstrate that What Hurts will be unable to prove the elements of its breach of express warranty claim without expert testimony. The Court accordingly **DENIES** Volvo Penta's summary judgment motion to the extent that it is predicated on the absence of expert testimony.

### 2. Notice

Volvo Penta next argues that it is entitled to summary judgment on Count III because What Hurts failed to provide adequate notice and an opportunity to cure the alleged product defects. ECF No. 54, at 25-26. Under Virginia Code § 8.2-607, the buyer must notify the seller "within a reasonable time" of discovering issues with the goods. Va. Code § 8.2-607(3)(a). But whether and when notice was provided in this case, and whether Volvo Penta had an adequate opportunity to "cure" any defect, plainly turns on disputed issues of material fact. See, e.g., ECF No. 61, at 27 (What Hurts) (referencing multiple emails to Volvo Penta notifying it of the ongoing water pressure issues with the Replacement Engines and Upgraded Lower Units); ECF No. 54, at 25-26 (Volvo

39

Penta) (reflecting the fact that "Volvo Penta's internal warranty files do not show any warranty claims made"). Accordingly, Volvo Penta's motion for summary judgment on Count III based on lack of notice and an opportunity to cure is **DENIED**.

### 3. Damages

Finally, Volvo Penta seeks a ruling on summary judgment finding that What Hurts cannot recover consequential, incidental, or direct damages because the Limited Warranty included a disclaimer that the seller would not be responsible for "any incidental or consequential damages." ECF No. 35-1, at 2. The Limited Warranty further specified that the seller's "sole and exclusive obligation" was repair or replacement of defective parts; stated differently, no direct monetary damages would be available.[25]  Id.; see ECF No. 54, at 28–29.

Under Virginia law, a seller of goods may preemptively limit a buyer's financial recovery by disavowing categories of damages. Va. Code § 8.2-719(1)(a).  The Court will generally enforce parties' agreed remedies limitations, but some "minimum adequate

---

[25] In some sense, there are overlapping damages limitations at issue in this case.  There are the repair/replacement and consequential/incidental limitations in the Limited Warranty, and there are additional "limitations" in the Release itself, where What Hurts has agreed to be responsible for certain costs.  See ECF No. 35-1, at 1.  Volvo Penta appears to argue that even if the Court finds that certain damages clauses in the Limited Warranty are unenforceable, the limitations in the Release remain enforceable.  As neither party has argued this point at length, the Court reserves ruling on this issue.  However, the Court is skeptical that the same analysis that the Court undertakes with respect to the damages clauses in the Limited Warranty does not apply with equal force to the damages clauses in the Release itself.

remedies" must remain available.   Id. § 8.2-719 cmt. 1. Accordingly, any clause which limits remedies in an unconscionable manner cannot be enforced.   Id.  And if circumstances arise that cause a limited remedy to fail its essential purpose, thereby undermining the adequacy of the limited remedy, then the Court cannot enforce that remedy limitation either.   Id. § 8.2-719(2). Clauses limiting or excluding damages are subject to different standards depending on the type of damages they deal with.  So the Court considers each category of damages in turn.

### a. Consequential Damages

Contractual clauses limiting or excluding consequential damages are valid "unless the limitation or exclusion is unconscionable."   Va. Code § 8.2-719(3) (emphasis added).[26] Unconscionability "deals primarily with a grossly unequal bargaining power at the time the contract is formed." Envirotech Corp. v. Halco Eng'g, Inc., 234 Va. 583, 593, 364 S.E.2d 215, 220 (1988); see Smyth-Bros.-McCleary-McClellan Co. v. Beresford, 128 Va. 137, 170, 104 S.E. 371, 382 (1920) (the inequality of an unconscionable bargain is "so gross as to shock the conscience"); see also 1 Kent Sinclair, Sinclair on Virginia Remedies § 36.8 (2022) (explaining that the principle of unconscionability is

---

[26] As defined by the Virginia UCC, consequential damages include (in relevant part) "any loss resulting from general or particular requirements and needs of which the seller [of a product] at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." Va. Code § 8.2-715(2)(a).

intended to prevent "oppression and unfair surprise" to the parties, and that the test for unconscionability is whether "the clauses involved are so one-sided" as to be unconscionable "based on the circumstances existing at the time of the making of the contract"). Ordinarily, the Court must determine whether a contractual provision is unconscionable by considering the particular facts and circumstances surrounding a transaction. See Carlson v. Gen. Motors Corp., 883 F.2d 287, 293 (4th Cir. 1989).

Here, even after discovery, What Hurts has introduced no evidence to suggest that, for example, it "had no 'meaningful choice' but to accept the limited warrant[y]" with the consequential damages disclaimer included. Id. Nor is the Court persuaded by What Hurts's bare assertion that this disclaimer "shocks the consci[ence]" because "no man in is senses and not under a delusion" would agree to such a disclaimer. ECF No. 61, at 31. Because What Hurts has introduced no evidence of grossly unequal bargaining power when the warranty was formed, the Court finds that the disclaimer of consequential damages is not unconscionable. Accordingly, Volvo Penta's motion for summary judgment is **GRANTED** to the extent that it seeks to preclude What Hurts from recovering any consequential damages.

### b. Incidental Damages

In contrast to consequential damages, incidental damage provisions are not expressly addressed in the relevant Virginia

remedies statute.[27]   See Va. Code § 8.2-719(3).   As a result, the parties dispute the proper standard for determining whether a clause eliminating recovery for incidental damages is enforceable. Volvo Penta contends that What Hurts must show that the incidental damages disclaimer is <u>unconscionable</u> for the Court to find that it is unenforceable.   ECF No. 54, at 29-30.   What Hurts argues that it must show only that the Limited Warranty remedy, repair or replacement, <u>failed its essential purpose</u> in order for What Hurts to recover incidental damages.   First, the Court will address which standard - unconscionability or failure of essential purpose - applies.   Then, the Court will assess whether Volvo Penta has carried its burden to demonstrate that it is entitled to summary judgment with respect to incidental damages.

The ordinary rule for evaluating clauses that purport to limit a buyer's remedies is that such clauses are enforceable unless "circumstances cause an exclusive or limited remedy to fail of its essential purpose." Va. Code § 8.2-719(2).   But there is a special rule that, on its face, only applies to consequential damages. The relevant language of the Virginia Code provides that "<u>[c]onsequential damages</u> may be limited or excluded unless the

---

[27] In a separate provision of the Virginia UCC, incidental damages are defined as including "expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach." Va. Code § 8.2-715(1).

limitation or exclusion is unconscionable." Va. Code § 8.2-719(3) (emphasis added).   Notably, incidental damages are not expressly referenced in this language.   Indeed, though the Virginia UCC separately defines consequential and incidental damages in Virginia Code § 8.2-715, the legislature chose to reference only consequential damages in Virginia Code § 8.2-719(3).   See also Va. Code § 8.2-713(1)(discussing the availability of "incidental and consequential damages") (emphasis added); Id. § 8.2-714(3) (same).

Under Virginia law, "[w]hen the language of a statute is unambiguous, [the Court] [is] bound by its plain meaning" and "must give effect to the legislature's intention" as evidenced by the language it chose unless doing so "would result in a manifest absurdity." Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007).   Furthermore, when the legislature "uses two different terms within the same act it is presumed to mean two different things." Klarfeld v. Salsbury, 233 Va. 277, 284-85, 355 S.E.2d 319, 323 (1987). As applied here, the legislature chose to create a higher barrier to invalidation, a finding of unconscionability, for consequential damages provisions alone. See Va. Code § 8.2-719(3); see also id. cmt. 3 (explaining that subsection 3 "recognizes the validity of clauses limiting or excluding consequential damages") (emphasis added).   Had the legislature intended for this provision to apply to incidental damages as well, "it would have so stated by the use of that term."

*Klarfeld*, 233 Va. at 285, 355 S.E.2d at 323.  The language of Virginia Code § 8.2-719(3) is unambiguous as to consequential damages, and there has been no argument from Volvo Penta that applying the language as written only to consequential damages would result in a "manifest absurdity."  Accordingly, Volvo Penta fails to demonstrate that the unconscionability standard in subsection (3) applies to incidental damages.[28]  All other remedy limitations remain valid unless a buyer can show that the exclusive or limited remedy failed its essential purpose.  See Va. Code § 8.2-719(2).  Therefore, the Court finds that What Hurts need only show that the Limited Warranty remedy failed its essential purpose to invalidate the incidental damages disclaimer.

With the standard determined, the Court next addresses whether Volvo Penta is entitled to summary judgment on the issue of incidental damages.  A contractually agreed-to limited remedy fails its essential purpose when "circumstances arising during

---

[28]  Volvo Penta argues that Virginia courts have extended the unconscionability requirement to incidental damage limitations as well, but the Court is unconvinced.  None of the cases which Volvo Penta cites in its brief squarely address whether Virginia Code § 8.2-719(3) is applicable to clauses limiting recovery for incidental damages.  See ECF No. 62, at 13-14.  While the Court's independent research reveals divergent interpretations of section 2-719(3) of the Uniform Commercial Code across different jurisdictions, in the absence of on-point Virginia caselaw, this Court, applying Virginia law, is bound by the plain meaning of a statute when its language is unambiguous.  See Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007); see also Burris Chem., Inc. v. USX Corp., 10 F.3d 243, 247 (4th Cir. 1993) (explaining that a federal court applying state law "rule[s] upon state law as it exists and do[es] not surmise or suggest its expansion").  The Court thus applies the text of Virginia Code § 8.2-719(3) as written to apply only to consequential damages limitations.

performance of the agreement" deprive the buyer of the substantial value of its bargain. Envirotech Corp., 234 Va. at 593, 364 S.E.2d at 220; see Va. Code § 8.2-719 cmt. 1. For example, when a seller limits a buyer's remedy to repair or replacement, that remedy may fail its essential purpose when neither repair nor replacement can "return the goods to their warranted condition." Hill, 696 F.2d at 297; see also J. White & R. Summers, Uniform Commercial Code § 13:20 (6th ed. 2023) (explaining that a limited remedy may fail its essential purpose "when the seller is willing and able to repair but cannot perform the repairs . . . because the goods . . . contain a design defect").

Volvo Penta contends that What Hurts cannot prove that the Limited Warranty failed its essential purpose "because Volvo Penta timely supplied replacement engines," which was an adequate remedy for any purported breach of warranty. ECF No. 54, at 29. But at the summary judgment hearing, What Hurts argued that the Replacement Engines and Upgraded Lower Units could not work together on the Vessel due to the Vessel's design, and accordingly, no amount of repair or replacement of the engines could have made both products perform as warranted. Ultimately, whether the Limited Warranty remedy failed its essential purpose rests on disputed issues of material fact, not the least of which includes resolving whether any oral warranties were created, and, if so, whether repair or replacement could not, in fact, restore the

engines to their "warranted" condition.  Because Volvo Penta fails to demonstrate that no reasonable fact finder could find in favor of What Hurts on this issue, Volvo Penta's motion for summary judgment is **DENIED** to the extent that it seeks to preclude What Hurts from recovering any incidental damages.

### c. Direct Damages

Finally, Volvo Penta argues that What Hurts cannot recover any direct damages.  However, as discussed above, a seller's limitation of remedies to "repair or replacement" may be unenforceable when that remedy has failed its essential purpose. Va. Code § 8.2-719(2).  For the same reasons discussed with respect to incidental damages, genuine disputes of material fact preclude this Court from determining at this stage that the Limited Warranty remedy did <u>not</u> fail its essential purpose.  If What Hurts can show that the Limited Warranty remedy failed its essential purpose, then direct damages may be available.  Accordingly, Volvo Penta's motion for summary judgment is **DENIED** to the extent that it seeks to preclude What Hurts from recovering any direct damages.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS in part** and **DENIES in part** Volvo Penta's motion for summary judgment.  ECF No. 53.  The Court **GRANTS** Volvo Penta's motion as to Counts I and II. The Court also **GRANTS** Volvo Penta's motion as to Count III to the extent that it seeks to preclude What Hurts from recovering

47

consequential damages.   Otherwise, the Court **DENIES** Volvo Penta's motion as to Count III.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all Counsel of Record.

**IT IS SO ORDERED.**

/s/ _____

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
January **5** , 2024