**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

WHAT HURTS, LLC,

               Plaintiff,

v.

VOLVO PENTA OF
THE AMERICAS, LLC,

               Defendant.

Case No. 2:22-cv-00552-MSD-LRL

**DEFENDANT VOLVO PENTA OF THE AMERICAS, LLC'S MEMORANDUM IN**
**SUPPORT OF ITS SUPPLEMENTAL MOTION FOR DISMISSAL AND/OR**
**ATTORNEY'S FEES FOR PLAINTIFF'S DISCOVERY VIOLATIONS**

      NOW COMES Defendant Volvo Penta of the Americas, LLC ("Volvo Penta"), by and

through undersigned counsel submits its Supplemental Memorandum in Support of its Motion for

Dismissal and/or Attorney's Fees for Plaintiff's Discovery Violations.

**INTRODUCTION**

      It now seems most likely that Plaintiff deliberately hid a significant incident in which the

subject Vessel and Original Engines at issue in this case were at least partially submerged and

almost completely sank during the most critical negotiation period that led to the underlying

contractual and warranty disputes at the very heart of this case.  Indeed, supplemental discovery

into that issue has confirmed that: (1) all of Plaintiff's principals and captains were aware of this

Sinking Incident when it occurred more than three years ago in February 2021; (2) Plaintiff's

counsel (Scott Wagner) was aware of the Sinking Incident no later than March 2023, before

discovery was propounded in this litigation; (3) the captain of the salvage vessel confirmed under

oath that the Original Engines were at least partially submerged during the sinking incident, which

1

would affect their warranty coverage; (4) none of Plaintiff's representatives disclosed this incident to Volvo Penta while negotiating the Release Agreement and Limited Warranty documents in this case; and (5) none of Plaintiff's representatives *or attorneys* disclosed the Sinking Incident to Volvo Penta during the pendency of this lawsuit, even though there are several documents and photos that were and are directly responsive to Volvo Penta's targeted discovery requests seeking the same.

Plaintiff's representatives' only explanation for this non-disclosure has been to argue that they did not think the Sinking Incident was relevant or important, so they did not think they needed to tell Volvo Penta about it, but this excuse falls woefully short. First, it strains credulity to think that Plaintiff's principals and captains did not think it was at all relevant to tell Volvo Penta that the subject vessel and engines *partially sank* while they were negotiating the replacement of those very engines.  It does not take an expert to understand that a sinking incident is about the worst thing that can happen to a vessel and its engines.  For these reasons, Plaintiff's non-disclosures should be considered willful, fraudulent, and/or made in bad faith.  Additionally, even if Plaintiff actually did not think the Sinking Incident was relevant or important as it claims, Plaintiff (and its counsel) nonetheless violated the Federal Rules of Civil Procedure by withholding those materials throughout the 18-month course of this litigation.  Simply put, Plaintiff does not get unilaterally to decide whether Volvo Penta should care about the Sinking Incident.  It is not Plaintiff's call to make.  Plaintiff should have produced those responsive Sinking Incident materials to Volvo Penta, and allowed Volvo Penta to determine what was and was not relevant to the issues in this case at the time when the responsive documents were requested.

This Court should exercise its broad toolbox of discovery sanctions to remedy Plaintiff's fraudulent and contumacious behavior, up to and including a complete dismissal of Plaintiff's

complaint, curative conclusions or presumptions, reimbursement of Volvo Penta's attorney's fees incurred in prosecuting these motions and conducting supplemental discovery, and any other sanctions that this Court deems just and proper.

## BACKGROUND

### *Volvo Penta Discovers the Sinking Incident*

The Court is now well-versed in the factual and procedural background of this maritime dispute related to the replacement of marine engines and lower drives, which is reset for a bench trial on July 9, 2024.  The case revolves primarily around the negotiation and execution of a Release Agreement whereby Volvo Penta agreed to replace engines and lower units on the Vessel due to complaints about the Original Engines.  The Parties negotiated the terms between January and March 2021 (the "Negotiation Period"), and executed the Release Agreement on March 11, 2021.  It is during this critical Negotiation Period that Plaintiff alleges Volvo Penta fraudulently concealed certain information and made additional misstatements that formed oral warranties—accusations that Volvo Penta vehemently denies.

While conducting some background research on the various witnesses expected to be called at trial, Volvo Penta's attorney Charles Wolf ran a search on Google on Friday, January 19, 2024, for the combined terms "Brent Loring" and "What Hurts," simply perusing search results to see if there were any new search "hits" that warranted further investigation in anticipation of likely cross examination at trial.  *See* Declaration of Charles Wolf, Esq., a copy of which is attached as **EXHIBIT A**.  Unexpectedly, Mr. Wolf found a search "hit" that referenced another federal lawsuit with a case number different than the immediate action.  *See id.*  After searching that case number on the PACER database, Mr. Wolf uncovered the fact that, unbeknownst to Volvo Penta, the Vessel had been the subject of a separate federal lawsuit filed in February 2023 in the Southern

3

District of Florida, captioned *Fast Response Marine Towing & Salvage, LLC v. M/Y What Hurts, Brent Loring, et. al.*, Case No. 1:2023-cv-20668. *See id.* A copy of that complaint is attached as **EXHIBIT B** (the "Verified Salvage Complaint").

Over the next twenty-four (24) hours, Volvo Penta's legal team comprehensively researched this newly-discovered lawsuit, which had never been disclosed by Plaintiff What Hurts. After reviewing the complaint and speaking with Fast Response Marine Towing & Salvage, LLC's counsel on Saturday, January 20, 2024, it became clear that the Vessel that is the subject of this lawsuit largely sank and had to be salvaged via emergency towing operations during the evening of February 25, 2021. The Verified Salvage Complaint included a demand letter as an exhibit (the "Salvage Demand Letter"), which included a full description of what occurred, and explained in great detail that the Vessel had taken on roughly "7,200 gallons (57,600 lbs., nearly 30 tons) of seawater" and that critical components of the Vessel were completely underwater, including the batteries and generator, which "were submerged." The Salvage Demand Letter is attached hereto as **EXHIBIT C**.

Perhaps most troubling of all, the Salvage Demand Letter and Salvage Complaint made clear that Plaintiff What Hurts' principals and captain were aware of the Salvage Incident and failed to disclose it at any point during its relationship and ongoing negotiations with Volvo Penta; and What Hurts' representatives ***and lead attorney*** were aware of the Salvage Incident and failed to disclose it during the entire pendency of this litigation despite multiple discovery requests that should have uncovered it.

### *Volvo Penta Moves for Sanctions and to Re-Open Discovery*

Immediately upon confirming the above facts, Volvo Penta filed its Motion [Doc. 94] and Supporting Memorandum [Doc. 95] to Reopen Discovery and for Sanctions Due to Plaintiff's

Material Nondisclosure (collectively, Volvo Penta's "Motion to Reopen").  After some briefing, on January 23, 2024, this Court entered its Order granting Volvo Penta's Motion to Reopen discovery, and reserving on the issue of whether discovery sanctions are appropriate [Doc. 101] (the "Order to Reopen"), providing the Parties roughly 4 months to conduct supplemental discovery on this limited issue.

Since that Order to Reopen, Volvo Penta has conducted written discovery and taken several depositions related to this issue at great time and expense.  Although Plaintiff continues to downplay the Sinking Incident, the evidence is clear that materials related to the Sinking Incident should have been disclosed, and that the Sinking Incident may have substantially affected the Original Engines at the most critical time, including possibly invalidating the applicable warranty.

### Supplemental Discovery Confirms that the Sinking Incident Could Have Impacted the Engines

In response to supplemental written discovery, Plaintiff What Hurts produced about 50 pages of previously undisclosed text messages, photos, and correspondence related to the Sinking Incident, as well as seven short videos.  Unfortunately, most of the photos and videos were taken after the Vessel had already been pumped out and saved by the Salvage Company.[1]  However, one video appears to show the bilge compartment in the interior aft (rear) of the Vessel with a significant amount of water while the Vessel is being pumped out shortly after the Salvage Company arrived.  Although the video will be difficult to embed, some still frame photos of the video are attached as **COMPOSITE EXHIBIT D**.[2]  This video is entirely consistent with the

---

[1] The photos and videos apparently were taken by Plaintiff's captain, Sean Phillips, who was not physically present when the Sinking Incident was discovered, and only observed portions of the event via Facetime on his phone and documented them after arriving at the scene later on.

[2] As noted, this video was taken after much of the water was already pumped out, but Captain Hansen from the Salvage Company testified that the fire extinguisher shown in Exhibit D (and the

Salvage Demand and Salvage Complaint's descriptions that the Vessel took on huge amounts of water and its aft/rear was going under when the Salvage Company arrived.

On April 25, 2024, Volvo Penta took the video deposition of Charles (Chuck) Hansen IV (the "Hansen Deposition"), the captain of the salvage vessel that arrived to save the What Hurts Vessel on the night of the Sinking Incident. A transcript of the Hansen Deposition is attached hereto as **EXHIBIT E.** When describing the Sinking Incident and its effects on the Original Engines, Mr. Hansen testified that at least some portion of the Original Engines were "absolutely" submerged when the Salvage Company arrived:

> Q:  ·When you say the stern is below the water line, the engines are mounted on the aft, the stern of ·the boat; right?· And so --
>
> A.· ·Yes.
>
> Q.· ·-- the stern is below the water line, *the engines are definitely in the water, and that's what's being represented by that comment; correct?*
>
> . . . .
>
> A: *Absolutely.  Yes.*
>
> Q.· ·And when we had talked about before the powerhead location, does this document and this note give you a better idea of how far or how deep the ·engines on this particular boat would have been down in the water when Fast Response first responded to the ·scene?
>
> A.· ·Yes, it would.· The -- yes, absolutely. · ·  For the stern to be under is -- that's kind ·of the minimum.· That's where the -- the surface that ·the outboards are physically mounted to or they're ·tied to, the very top of that was already under water by several inches when I got there because in order ·for those trim switches that I was referencing earlier, typically five or six inches above the transom that the vessel -- that the engines are mounted to, that is what he's referring to is under ·water.
>
> Q.· ·Okay.· And so would it be correct to say that at least at that point upon first arrival by Fast  ·Response, that the engines were submerged in water?

---

generator next to it) was entirely submerged underwater when he arrived, which shows just how serious the situation was.  Ex. E, Hansen Dep. Tr. at 50:3-23.

A.· ·I couldn't say the engines.· I don't know at ·what -- where the powerhead's located inside the shell of the outside of the motor because all I could see is the outside.· I don't know how high or low they're mounted.· Possibly the bottom of the engines got under water, got submerged.

Q.· ·Okay.· So let me rephrase.· ***Is it possible a portion of the engines were submerged when Fast Response first arrived?***

A.· ·***Yes.· Absolutely.***

Ex. E, Hansen Transcript at 28:5-29:19 (emphasis added).

Captain Hansen further clarified that he did not have the expertise to say with certainty whether that level of submersion would have caused damage to the internal workings of the Original Engines, but

The trim -- the trim switches [for the Engines] were in the water when I arrived or about that level, and I ·don't -- I don't have specific knowledge of Seven Marines or have seen them without their cowling cover off but if it was a normal outboard motor, ***maybe two or three inches of the powerhead would be under water***, but I do not know the inner workings of a Seven and know exactly how it's situated in the powerhead so I couldn't tell you with certainty.

*Id.* at 50:3-51:18 (emphasis added).

Plaintiff's Captain Sean Phillips was not physically present when the Sinking Incident was discovered, and was only able to observe via Facetime on his cell phone until he later came to the scene after the Salvage Company had saved the Vessel.  However, when he was told what was happening, he immediately sent the following string of text messages to Plaintiff's principals Lee Grammas and Brent Loring:



This series of text messages is produced in its entirety as **EXHIBIT F (PLT-SUPPL-0041-48)**.[3]

The following day, Captain Phillips reported to Lee Grammas and Brent Loring that the Sinking

Incident had caused serious problems: "We have no power and things are malfunctioning due to

the water ingestion." *Id.* at PLT-SUPPL-0044.

Volvo Penta also deposed Plaintiff's principal Lee Grammas, who agreed that "submersion

of the engines would be a significant event in the life of the engines," and that "Obviously, we all

know that" it is "bad" "if engines go underwater." **EXHIBIT G**, Grammas Dep. Tr. At  21:4-14.

---

[3] The text messages were produced in reverse chronological order, so they have been attached in
reverse page order for the Court's convenience to read them chronologically starting on the night
of the Sinking Incident.

Suffice it to say, while Plaintiff is now trying to downplay the significance of the Sinking Incident,[4] it was a major issue at the time, and all of Plaintiff's principals and representatives knew that to be the case when it occurred on February 25, 2021.

### *Supplemental Discovery Confirms that Plaintiff's Representatives were All Aware of the Sinking Incident and Intentionally Hid the Information from Volvo Penta*

As noted above, Lee Grammas, Brent Loring, and Captain Phillips all were aware that the vessel was "sinking" on the night it occurred on February 25, 2021.  The timing of the Sinking Incident could not have been more critical—the Sinking Incident occurred while the Parties were actively negotiating the Release Agreement, and only fifteen (15) days before the final execution of the same.  Plaintiff had sent Volvo Penta a demand letter related to the Original Engines one month prior on January 15, 2021.  Ex. G, Grammas Dep. Tr. at 21:19-22:21.  Mr. Grammas had a direct line of communication to Volvo Penta representative Tony Kelleher, and engaged in extensive cell phone text messages back and forth during the relevant time period.  *Id.* at 28:7-30:23.    Indeed, ***Mr. Grammas and Tony Kelleher exchanged approximately fifty (50) text messages in the week leading up to the Sinking Incident, including texts on the exact day the Sinking Incident occurred***.  *Id.* at 29:16-30:23. Grammas and Kelleher continued to text back and forth and converse via phone regularly in the following several weeks up through and after the parties entered into the Release Agreement in this case on March 11, 2021.

Despite this open line of communication and constant interaction, and despite Plaintiff's awareness of the severity of the Sinking Incident, ***none of Plaintiff's representatives ever informed Volvo Penta about the Sinking Incident.***  To the contrary, Plaintiff pushed Volvo Penta

---

[4] Plaintiff's representatives Sean Phillips, Lee Grammas, and Brent Loring, all testified at deposition that they did not believe the Original Engines were submerged, but none of them were there to witness it, so it is unclear how they can now be so sure.  Captain Phillips only saw secondhand on his phone, and Lee Grammas and Brent Loring did not witness anything at all.

to finalize the Release Agreement to get new Replacement Engines and Upgraded Lower Units while hiding the material fact that the very engines the parties were arguing about had recently been (at least partially) submerged.  Due to Plaintiff's active concealment of the Sinking Incident, the Parties executed the Release Agreement and Volvo Penta agreed to provide the Replacement Engines and Upgraded Lower Units that are the subject of this present lawsuit.  Importantly, the Sinking Incident related directly to the validity of Plaintiff's warranty claims on the Original Engines, all of which arguably would have been automatically voided by the Sinking Incident under the terms of the Seven Marine Limited Warranty, which expressly excludes engines that have been damaged as a result of "submersion."

### *Volvo Penta Would Not Have Entered into the Release Agreement Had It Known About the Sinking Incident*

After finding out about the Sinking Incident, Volvo Penta representatives have confirmed that they never were made aware of the Sinking Incident by What Hurts despite being in frequent dialogue with What Hurts' representatives at the time.[5]  Volvo Penta's representatives were flabbergasted, and confirmed that this would have drastically changed their evaluation of Plaintiff's demand that the Original Engines be replaced under warranty, as the Original Engines were at that point essentially salvaged engines.  In fact, Volvo Penta representatives confirmed that if they had known about the Sinking Incident, they likely would not have entered into the Release Agreement or replaced the Original Engines *at all*.  Again, Volvo Penta entered into the Release Agreement due to Plaintiff's ongoing threat to assert potentially actionable warranty claims related to the Original Engines.  But the governing Seven Marine Limited Warranty stated

---

[5] Mr. Grammas testified at his deposition that he may have mentioned the Sinking Incident to Tony Kelleher on the phone, but is not sure.  However, all of Volvo Penta representatives (including Tony Kelleher) have emphatically denied that they were ever made aware of the Sinking Incident. An affidavit as to the same can be made available to the Court if it deems it appropriate.

in clear terms that any products that have been damaged as a result of "accidents" or "submersion" are not covered by the terms of the Limited Warranty, thus rendering Plaintiff's threatened claims pertaining to the Original Engines invalid from the start:

**GENERAL EXCLUSIONS FROM WARRANTY**

This warranty will not cover routine maintenance or the repair of damage if the damage is a result of abuse or neglect of the product. Examples of abuse and neglect include, but are not limited to:

1. Racing or competition use, modification of original parts, use of an accessory or part not manufactured or sold by Seven Marine, and abnormal strain.

2. Lack of proper maintenance and off season storage as described in the Owner's Manual; installation of parts or accessories that are not equivalent in design and quality to genuine Seven Marine parts.

3. Operation of the motor at an rpm other than specified, use of lubricants or oils that is not suitable for Seven Marine outboard motor use.

4. Damage as a result of accidents, collisions, contact with foreign materials, or submersion.

5. Growth of marine organism on motor surfaces.

6. Normal deterioration.

Moreover, part of the consideration for the Release Agreement is that Plaintiff was to provide the Original Engines back to Volvo Penta. If those Original Engines had recently been submerged, they would have had significantly less value as salvage engines. And finally, Plaintiff's failure to disclose this Sinking Incident robbed Volvo Penta of its ability to investigate the cause of any issues with the Original Engines. Plaintiff effectively spoliated any evidence related to its original warranty arguments and deceived Volvo Penta into entering a favorable deal.

It is impossible to predict exactly how things would have unfolded if What Hurts had disclosed the Sinking Incident when they should have, but to be clear, the entire Release Agreement, the Replacement Engines, the Upgraded Lower Units, and this lawsuit itself is all irretrievably tainted by Plaintiff's intentional concealment of the Sinking Incident.

## *Plaintiff and its Counsel Continued to Hide the Sinking Incident During Discovery in this Case*

Plaintiff should have disclosed the Sinking Incident to Volvo Penta during the Negotiation Period as critical information relevant to the Release Agreement, but even worse is Plaintiff's (and Plaintiff's counsel's) failure to produce those materials in discovery in this case.  Plaintiff itself was well aware of the Sinking Incident when it occurred, and Plaintiff's lead counsel (Scott Wagner) became aware of the Sinking Incident *no later than March 7, 2023*, when he engaged in email  correspondence with the Salvage Company's attorney.  A copy of this email is attached hereto as **EXHIBIT H**.

Critically, ***Volvo Penta served written discovery in this matter, including Requests for Production of Documents ("RFPs") and Interrogatories in July 2023—four months after Plaintiff's counsel was put on notice by the Salvage Demand Letter***.  Volvo Penta's RFPs included several requests that would have covered documents related to the Sinking Incident, including the following:

- 3. All statements, declarations or affidavits (written, recorded, sworn or otherwise), provided from or produced to you by anyone that refer or relate to the subject matter of this Action.

- 4. Any photographs, motion pictures, videotapes, drawings or reproductions of any type showing or depicting the Vessel, Engines, Lower Units, or otherwise concerning Plaintiffs claims against VPA.

- 8. All documents regarding any inspection or survey of the Vessel, including the Engines and component parts.

- 9. All communications between or among you, VPA, and/or any Person, regarding any inspection or survey of the Vessel, including the Engines and component parts.

- 10. All documents regarding any requested repairs or actual repairs conducted on the Vessel, including the Engines and component parts.

- 11. All communications between or among you, VPA, and/or any Person, regarding any requested repairs or actual repairs conducted on the Vessel, including the Engines and component parts.

- 14. All value estimates for the Vessel.[6]

- 19. All documents regarding the condition of the Vessel, including the Engines and component parts.

- 20. All communications between or among you, VPA and/or any Person, regarding the condition of the Vessel, including the Engines and component parts

- 43. All documents describing, demonstrating or otherwise relating to any appraisals or valuations of the Vessel, including the Engines and Lower Units.

A true and correct copy of Volvo Penta's RFPs is attached hereto as **EXHIBIT I**.

Similarly, Volvo Penta's Interrogatories to Plaintiff included the following relevant

Interrogatories:

- Interrogatory No. 1:  Please identify any person who has, claims to have, or whom you believe may have knowledge or information pertaining to any fact alleged in the Complaint filed in this Action, or any fact underlying the subject matter of this Action, and for each such person, please provide the person's name and last known address and telephone number; and a summary of the information and knowledge possessed by the person that supports, refutes, or in any way relates to any fact or circumstances forming the basis of your Complaint.

- Interrogatory No. 8:  Please identify the dates the Vessel, Replacement Engines, and/or Upgraded Lower Units have been out of service, totally unable to be used, and/or in a repair shop, and please specify the reasons why it was out of service, totally unable to be used, and/or in a repair shop for each date of unavailability.

- Interrogatory No. 23:  What is the current status of the Vessel and any engines or units that are currently installed?

A true and correct copy of Volvo Penta's Interrogatories is attached hereto as **EXHIBIT J**.

Suffice it to say that documents related to the Sinking Incident were clearly within the

scope of Volvo Penta's initial discovery requests in this action.  Plaintiff served its discovery

responses in this case on September 1, 2023—several months after the latest possible date that

both Plaintiff and its counsel were clearly on notice of the Sinking Incident—but What Hurts did

---

[6] The Verified Salvage Complaint and Salvage Demand Letter included specific valuations of the Vessel and component parts as part of its request for damages.

not disclose any information whatsoever related to the Sinking Incident.  No objections were asserted as to the Sinking Incident; rather, it was just treated by Plaintiff as if it never happened.[7]

Accordingly, Volvo Penta never found out about the Sinking Incident until Mr. Wolf's fortuitous Google search on January 19, 2024.  It cannot be emphasized enough how directly relevant to this lawsuit the Sinking Incident is—not only would all warranty coverage arguably have been immediately extinguished at the time of the submersion, but in all likelihood the Vessel and its component parts, including the Engines, would have suffered extreme damage by submersion in saltwater that would have obvious impact on the Vessel and Engines' subsequent performance.  Plaintiff's only surviving claim against Volvo Penta essentially revolves around its allegations of representations made during the negotiations of the Release Agreement and perceived issues with the Engines' performance, so the fact that Plaintiff hid the material fact that the Vessel sank and required emergency salvage is of critical importance.

After full discovery, it is now clear that Plaintiff and its counsel were fully aware of the Sinking Incident at all times, and simply decided to withhold that information (and supporting documentation) from Volvo Penta.

---

[7] This Motion focuses primarily on Plaintiff's apparently willful non-disclosure of the Sinking Incident, which is Plaintiff's most blatant, egregious, and prejudicial discovery violation.  But this material non-disclosure comes on the tail of a lengthy history of Plaintiff flatly ignoring discovery requests, attempts to confer or schedule depositions, and court orders that has run the entire course of this litigation and continues to this day. (Doc. 50). Volvo Penta has actively been seeking the deposition of Alexandra Benitez (a What Hurts employee/contractor who was on or near the Vessel when the Sinking Incident occurred) for nearly two months in supplemental discovery, but Plaintiff has repeatedly ignored requests for that deposition or promised dates only to ignore them.  In short, Plaintiff and its counsel have played fast and loose with discovery rules and this Court's orders throughout the duration of this litigation, so it is not surprising that they would also intentionally hide a bad fact.

## APPLICABLE LAW FOR DISCOVERY SANCTIONS

A federal district court's power to sanction a party for discovery violations derives from two sources: (1) the Federal Rules of Civil Procedure; and, (2) the court's "inherent power to control the judicial process and litigation." *Jenkins v. Woody*, 3:15CV355, 2017 WL 362475, at *12 (E.D. Va. Jan. 21, 2017). A district court enjoys a significant breadth of discretion in both imposing discovery sanctions and in selecting the appropriate sanction for the circumstances. *Mey v. Phillips*, 71 F.4th 203, 217 (4th Cir. 2023). A non-exhaustive list of potential discovery sanctions is provided in Federal Rule of Civil Procedure 37:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37 (b)(2)(A) & (d)(3). In addition to the above discretionary substantive sanctions, Rule 37 provides that a court "***must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure***, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C), (d)(3).

When deciding what sanctions should be imposed, courts in the Fourth Circuit apply a four-part test that considers:

> (1) whether the non-complying party acted in bad faith,
> (2) the amount of prejudice that noncompliance caused the adversary,
> (3) the need for deterrence of the particular sort of non-compliance, and
> (4) whether less drastic sanctions would have been effective.

*Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998). If a court determines that a party acted in bad faith in hiding or spoliating discovery, or that there is significant prejudice to the opposing party, it is well within its discretion to issue a severe sanction such as dismissal, preclusion of a key witness, or an adverse inference on a key issue in the case. *See, e.g., id.* (affirming a default judgment where a party acted in direct defiance of court orders); *S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 599 (4th Cir. 2003) (excluding expert opinions where those opinions were not properly disclosed); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 500 (E.D. Va. 2011) ("[I]mposing a sanction that terminates a case 'may be necessary if the prejudice to the [movant] is extraordinary, denying it the ability' to adequately pursue its case.").

## ARGUMENT

It is undisputed that Plaintiff did not disclose the Sinking Incident during initial discovery, despite Volvo Penta issuing discovery requests that clearly would have encompassed the Sinking Incident. Thus, the only inquiry is what type of sanctions should be imposed by this Court. Plaintiff's extreme actions obviously taken to deceive Volvo Penta in this case warrant a strong remedy, as Volvo Penta has been irreversibly harmed and unduly prejudiced. Not only would the original Seven Marine Limited Warranty have been extinguished and/or voided at the time of the Sinking Incident, but no further warranty extensions would have been even contemplated had Volvo Penta known of the Sinking Incident. Volvo Penta's defense in this lawsuit would have been drastically different, pointing to Plaintiff's inability to establish that any perceived issues with the Replacement Engines' performance were not attributed to the Sinking Incident and subsequent damages suffered by the Vessel and its component parts. Furthermore, Volvo Penta would have likely asserted counterclaims against Plaintiff for its attorneys' fees and costs incurred

in defending this action, as well as any costs related to the original Release Agreement.  All of these remedies have been practically foreclosed due to Plaintiff's and Plaintiff's counsel's failure to disclose the Sinking Incident, despite significant written discovery issued to Plaintiff that clearly would have required disclosure of the Sinking Incident.  Plaintiff's actions in this case are tantamount to fraud on this Court, as the entire lawsuit is tainted by what plainly seems to be intentional non-disclosure of key information years ago when the Parties reached their agreements.

Additionally, Plaintiff's knowing concealment of the Sinking Incident, combined with the prejudice to Volvo Penta, justifies harsh discovery sanction up to and including dismissal of Plaintiff's case, adverse inferences, or other sanctions the Court deems just and proper.  Finally, even if the Court is unconvinced to impose a severe substantive sanction, Volvo Penta had to engage in significant additional motion practice and discovery at great cost to get to the bottom of the Sinking Incident, which should have been disclosed early in this litigation.  At the very least, this Court should require Plaintiff (and/or its attorney) to pay for Volvo Penta's costs incurred in filing the underlying motions and in conducting supplemental discovery related to the Sinking Incident.

I.   **Plaintiff's Claims Should be Dismissed for Fraud on the Court.**

Although it is admittedly reserved for extreme situations, the evident deception by Plaintiff and its resultant impact on both Volvo Penta and the Court's ability to impart justice warrants a finding of fraud on the court.  "A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989).  The federal court's

powers to manage its cases include an "inherent power to do what is necessary and proper to conduct judicial business in a satisfactory manner," including equity powers. *Id.* at 1119; *see also U.S. v. Shaffer Equipment Co.*, 11 F.3d 450, 461 (4th Cir. 1993) (noting that the court "must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates [and that] [t]his power is organic, without need of a statute or rule for its definition…").

These equitable powers include the power to "order dismissal or default where a litigant has stooped to the level of fraud on the court." *Aoude*, 892 F.2d at 1119; *see also U.S. v. Shaffer*, 11 F.3d at 462 ("Accordingly, we recognize here that when a party deceives a court of abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process, the court has the inherent power to dismiss the action."). The *Auode* case is particularly instructive as the facts at issue in that case (the plaintiff counterfeited a document and filed its complaint largely based on that fake document, only later after discovery revealed the truth amending the complaint to reflect the correct document) actually pale in comparison to here, where Plaintiff's own legal counsel is apparently involved in a deliberate failure to disclose clearly relevant facts that completely undercut Plaintiff's primary claims.

Importantly, the *Auode* case found that no evidentiary hearing was required, as the record evidence was undisputed and the challenged party had sufficient notice and opportunity to respond. *Id.* at 1120.  Once the court in that matter realized how tainted the whole original lawsuit was, the court found it proper to dismiss the action, noting that "[o]nce a litigant chooses to practice fraud, that misconduct infects his cause of action, in whatever guises it may subsequently appear." *Id.* at 1121.  Much like in *Auode*, here, Plaintiff "chose to play fast and loose with [its opponent] and

with the district court... [and] [h]e was caught out... and the court, jealous of its integrity and concerned about deterrence, was entitled to send a message, loud and clear." *Id.* at 1122.

Courts in the Fourth Circuit Court of Appeals similarly have recognized their inherent powers to combat fraud on the court, although the situations normally involve post-judgment scenarios. As an example, in the *Cleveland Demolition Co., Inc. v. Azcon Scrap Corp.* case, the Fourth Circuit Court of Appeals acknowledged that pursuant to Rule 60(b), "district courts may entertain an independent action in equity to set aside a judgment for fraud on the court." *See* 827 F.2d 984, 986 (4th Cir. 1987) (noting that "[a]lthough perjury by a witness will not suffice, the 'involvement of an attorney, as an officer of the court, in a scheme to suborn perjury should certainly be considered fraud on the court... Thus, if [the witness] deliberately lied and [the attorney] participated in the fraud, the earlier verdict... should be set aside." *Id.* While in that case the Court determined that fraud on the court had not been established and the attorneys claiming it had failed to conduct "a reasonable factual investigation," *see id.* at 988, here, in contrast, Volvo Penta brought this matter to the Court's attention promptly so that "evidentiary conflicts must be resolved during the initial trial." *Id.* at 987. And again it bears repeated emphasis that Volvo Penta now has record proof that Plaintiff's attorney was well aware of the Sinking Incident and subsequent Salvage Demand Letter in March of 2023, but failed to disclose it, and instead worked with What Hurts' captain Sean Phillips to provide interrogatory answers that materially misrepresented the facts and blatantly ignored the catastrophic Sinking Incident.

The Fourth Circuit Court of Appeals looks to the following factors when determining if a fraud on the court warrants dismissal of an action, including "(1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice

to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest." *See, e.g.,* *U.S. v. Shaffer Equipment Co.*, 11 F.3d 450, 462-463 (4th Cir. 1993). Virtually every one of these factors supports dismissal here, as (1) Plaintiff clearly knew of the Sinking Incident and failed to disclose it despite it being both relevant and responsive to written discovery; (2) both the Plaintiff *and* its attorney were aware of and complicit in this deception; (3) this entire lawsuit should have never even been filed nor the extensive accompanying motion practice, not to mention the upcoming bench trial that is all based on purported warranty issues relating to a Vessel that had literally sunk years ago; (4) Volvo Penta has been *extremely* prejudiced by having been subject to an unnecessary and unfounded Release Agreement when the underlying warranty would have been voided by the Sinking Incident as well as years of subsequent litigation; (5) no other remedy would be adequate to address these extreme prejudices; and (6) the public certainly suffers when the court's docket is abused through such blatant conduct. *See also Liva v. Cty. of Lexington*, 972 F.2d 340 (4th Cir. 1992) (affirming dismissal of an action when fraud on the court was established). Thus, this Court is fully justified in finding that Plaintiff perpetrated a fraud on the Court that requires dismissal of its pending claims with prejudice and other sanctions to make Volvo Penta whole.

## II.    The Court Should Issue Significant Discovery Sanctions Based on the *Anderson* Test.

Even if the Court is not convinced that Plaintiff's actions rise to the heightened threshold of fraud on the court, they certainly are unexcused non-disclosures that are subject to substantive discovery sanctions up to and including dismissal. Plaintiff acted in bad faith to severely prejudice Volvo Penta's ability to negotiate and defend itself, and this Court should impose significant

sanctions to make things right and deter future wrongful behavior.  For the reasons that follow, Plaintiff's final remaining claim should be dismissed with prejudice.  In the alternative, Plaintiff should be barred from arguing that Volvo Penta misled it during the negotiation of the Release Agreement, the Court should conclusively find that Plaintiff acted in bad faith during the negotiations, or the Court should issue other curative sanctions it deems appropriate or remedial.

### a.  Plaintiff Acted in Bad Faith by Concealing the Sinking Incident.

The first (and arguably most important) *Anderson* factor in determining what sanctions to impose is whether the offending party acted in bad faith.  *Anderson*, 155 F.3d at 504.  Bad faith is necessarily established when a party acts willfully and with intent to deprive the opposing party of the evidence or information or put them at a disadvantage.  *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 497 (E.D. Va. 2011).  Such bad intention can be inferred from circumstances such as timing or refusal to provide information that has been requested or commanded.  *See Belk*, 269 F.3d at 348 (finding bad faith where a party ignored a court order to supplement trial witnesses until the eve of trial).

Here, the evidence of Plaintiff's bad faith is extensive.  It is undisputed that all of Plaintiff's representatives were aware of the Sinking Incident at the time it occurred on February 25, 2021, as they were actively negotiating the underlying Release Agreement to get new engines in this case.  Mr. Grammas testified that he knew that "obviously" a submersion incident would be incredibly important in relation to the engines.  And the Plaintiff's principals were in constant contact with Volvo Penta representatives during that time, yet failed to tell them that the Vessel had suffered a Sinking Incident that may have adversely impacted the subject engines.  More egregiously for this Court's consideration, Plaintiff's counsel was well aware of the details of the

Sinking Incident and Salvage Complaint before ever being served with discovery in this case, and yet failed to produce responsive materials in their possession regarding the same.

Additionally, ***Plaintiff's only defense to their non-disclosure (at all points in time) is that they did not think it was important or relevant that their Vessel and Original Engines partially sank and had to be salvaged only two weeks before the Parties entered into the most critical document in the case regarding those same engines***.  Notably, Plaintiff produced hundreds of other pages of documents in discovery related to issues and repairs of the Original Engines.  The only apparent documents relating to the Original Engines that they did ***not*** produce (of which Volvo Penta is aware ) are those related to the Sinking Incident, so it is suspicious at best that Plaintiff decided that only that one issue was not relevant.  Plaintiff's excuse falls flat on its face, and frankly strains credulity.  Even if the Court were convinced that Plaintiff legitimately thought the Sinking Incident had no impact on the Original Engines, Plaintiff (and certainly Plaintiff's counsel) knew full well that such a determination was not theirs to make.  They should have disclosed the Sinking Incident to Volvo Penta and allowed Volvo Penta to determine the relevance. They did not do so because they did not want Volvo Penta to know about it.

The only logical conclusion is that Plaintiff intentionally hid the fact that the subject Vessel and Original Engines partially sank at the most critical time, and it  would have gotten away with it if not for some fortuitous Googling from Volvo Penta's counsel.  Plaintiff acted in bad faith, and, accordingly, is subject to the most severe of discovery sanctions, including dismissal.

   b. <u>**Plaintiff's Concealment of the Sinking Incident Severely Prejudiced Volvo Penta.**</u>

The second prong of *Anderson* requires an examination of the degree of prejudice to the opposing party.  155 F.3d at 504.  The prejudice here is difficult to assess because Plaintiff's concealment spans not only discovery in this case, but several years back to the date of this case's

inception.  Had Volvo Penta known about the Sinking Incident at the time, the entire course of events that form Plaintiff's Complaint undoubtedly would have played out very differently, and the Parties likely would not be here today at all.  Indeed, Volvo Penta representatives have informed undersigned counsel that they at the very least would have investigate the Sinking Incident at the time, and very likely would not have honored the voided warranty or entered into the Release Agreement.

Ironically, Plaintiff's primary claim in this case is that Volvo Penta misled it during the Parties' negotiation of the Release Agreement, but Plaintiff was actively hiding the fact that the very engines they were exchanging had sunk only two weeks before reaching the deal.  It is impossible to go back 3 years to the Parties' negotiations and determine exactly how things would have played out, but things would be very different, and Volvo Penta never got the chance to find out.

Moving onto Plaintiff's failure to disclose the Sinking Incident in discovery during the pendency of this case, the prejudice is more obvious to assess.  Had Plaintiff notified Volvo Penta of the Sinking Incident, Volvo Penta could have filed counterclaims, changed its affirmative defenses, perhaps changed its entire defense strategy.  Volvo Penta only discovered the Sinking Incident by happenstance only two weeks before trial, and after the Parties had briefed and argued extensive summary judgment motions.  This Court graciously allowed Volvo Penta time to perform supplemental discovery—for which Volvo Penta is grateful—but the entire case would have unfolded differently if Plaintiff had simply disclosed an obvious material fact:  that the subject Vessel partially sank right at the key moment of the Parties' negotiations.  Volvo Penta's prejudice is obvious, and impossible to completely undo.  Thus, Plaintiff's claims should be dismissed.

### c.   Plaintiff's Conduct and Discovery Violations Need to be Deterred.

The third prong of *Anderson* requires the Court to consider whether the non-complying party's conduct needs to be deterred.  155 F.3d at 504.  As elaborated above, Plaintiff's conduct in negotiations and in this case were to hide blatantly relevant information and hope that Volvo Penta would never find out.  This Court should not reward Plaintiff for this behavior.  Rather, it should sanction it for doing the same so that future parties are not encouraged to mislead parties with whom they are negotiating and then hide the evidence in the course of a federal lawsuit regarding that exact negotiation.

### d.   Lesser Sanctions Will Not Effectively Restore Volvo Penta's Position.

The fourth and final prong of *Anderson* requires the Court to consider whether the non-complying party's behavior could have been remedied with a less drastic measure.  155 F.3d at 504.  Short of a dismissal or a dispositive finding of fact related to the Release Agreement negotiations, it is unclear what remedy could make Volvo Penta whole.  Plaintiff's concealment of the Sinking Incident has sculpted and tainted every aspect of this litigation, so it is impossible to undo.   Other "lesser" sanctions such as adverse inferences, barring non-disclosed facts/testimony, or limiting a witness's testimony will not adequately address Volvo Penta's prejudice, nor will it appropriately punish Plaintiff for their deceit.  This Court should dismiss Plaintiff's remaining claims or find that Plaintiff is barred from proceeding based on unclean hands during the negotiations.  At the very least, Volvo Penta should be permitted to assert additional affirmative defenses such as unclean hands, laches, and others that would preclude Plaintiff's recovery.

### III.   <u>Volvo Penta Should be Awarded Costs and Fees Incurred in Prosecuting These Motions and Conducting Supplemental Discovery.</u>

While the above substantive sanctions are given firmly to the Court's discretion, the Court "***must*** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C), (d)(3).  The award of attorney's fees is presumed, and does not require proof of bad faith or prejudice.  *See, e.g., White v. Golden Corral of Hampton, LLC*, 4:13CV27, 2013 WL 12143951, at *1 (E.D. Va. Dec. 20, 2013) ("While all four factors are relevant to the Court's exercise of discretion, a finding of bad faith is not a necessary precursor to impose attorney's fees and costs incurred as a result of a party's failure to comply with discovery.").  *Diversified Lending, LLC v. Hotz*, CV112MC10LOTCB, 2019 WL 149557, at *2 (E.D. Va. Jan. 9, 2019) ("A plain reading of Rule 37 makes the award of reasonable expenses upon any violation of a discovery order, as a general matter, mandatory, not permissive." (quoting *Ins. Recovery Grp., Inc. v. Connolly*, 977 F. Supp. 2d 16, 26 (D. Mass. 2013))).  This Court has routinely awarded attorney's fees for discovery non-disclosures even when they were clearly innocent or inadvertent because it is necessary to put to the opposing party back in the same position it would have been in but for the nondisclosure. *See, e.g., Diversified Lending*, 2019 WL 149557, at *2 (holding a pro se litigant responsible fees for failing to timely respond to discovery); *White*, 2013 WL 12143951, at *1 (same); *Samsung Elecs. Co., Ltd. v. Nvidia Corp.*, 314 F.R.D. 190, 202 (E.D. Va. 2016) (granting a mistrial and awarding all resulting fees where a party inadvertently failed to disclose a document that its expert relied on); *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (continuing trial and awarding corresponding attorney's fees when a party inadvertently failed to supplement its witness list).

Here, Plaintiff's non-disclosure is not substantially justified.  Plaintiff either intentionally withheld key information from Volvo Penta in bad faith, or—even if the Court believes Plaintiff's excuses—Plaintiff unilaterally determined that a significant event that may have affected the Vessel and Engines should be withheld from Volvo Penta.  Neither of these positions justifies non-disclosure, Volvo Penta suffered as a result of that non-disclosure, and it should be made whole.

Due to Volvo Penta's eleventh-hour discovery of the Sinking Incident, it had to engage in significant motion practice, and then follow that up with extensive supplemental discovery including propounding written discovery, reviewing materials, preparing for and taking depositions, and then continuing to brief this issue for the Court.  All of this took significant time, effort, and resulted in substantial legal fees that could (and should) have been avoided if Plaintiff simply had disclosed the Sinking Incident in the first place when it should have.  This Court should award Volvo Penta all reasonable costs and fees incurred in prosecuting the present motions, and in conducting supplemental discovery related to the Sinking Incident.  Volvo Penta would be happy to submit its invoices and/or supplemental briefing on fee entitlement and amount should the Court rule in its favor on this issue.

## CONCLUSION

Plaintiff What Hurts hid the fact that the subject Vessel (and the Original Engines that were the subject of the parties' negotiations) had partially sank right at the critical moment the Parties entered into the Release Agreement that governs this entire dispute.  Plaintiff hid it from Volvo Penta at the time they negotiated, and Plaintiff and its counsel hid it from Volvo Penta in this litigation.  This bad-faith concealment requires appropriate sanctions, including findings of fraud on the court, dismissal with prejudice, conclusive findings in Volvo Penta's favor, or at the very least, an award of all reasonable costs and fees incurred due to Plaintiff's failure to disclose.

Dated:  June 7, 2024

Respectfully submitted,

_____/s/_____        _____/s/_____

Christopher A. Abel (VSB No. 31821)            Christina M. Paul (FL Bar No. 596876)
Amelia Anne Gilmer (VSB No. 98202 )            *Admitted Pro Hac Vice*
WILLCOX & SAVAGE, P.C.                          Joshua C. Carpenter (FL Bar No. 109413)
440 Monticello Avenue, Suite 2200              *Admitted Pro Hac Vice*
Norfolk, Virginia 23510                        K&L GATES LLP
Telephone:  757.628.5500                       Southeast Financial Center
Facsimile:   757.628.5566                      200 S. Biscayne Boulevard, Suite 3900
cabel@wilsav.com                               Miami, FL  33131-2399
agilmer@wilsav.com                             Telephone:     305-539-3300
                                               Facsimile:      305-358-7095
*Local Counsel for Defendant Volvo Penta of*   christina.paul@klgates.com
*the Americas, LLC*                            joshua.carpenter@klgates.com

                                               *Florida Counsel for Defendant Volvo Penta*
                                               *of the Americas, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel or parties on the below service list on this 7th day of June, 2024.

## Service List

Scott A. Wagner, Esq.
**WAGNER LEGAL**
3050 Biscayne Blvd., Suite 701
Miami, FL 33137
Direct: 305-768-9247
Cell: 305-794-8508
sw@wagnerlegalco.com

*Florida Counsel for Plaintiff What Hurts, LLC*

Richard Ottinger, Esq.
**WOODS ROGERS VANDEVENTER BLACK PLC**
101 West Main Street
Suite 500 World Trade Center
Norfolk, VA 23510
P (757) 446-8665
F (757) 446-8670
richard.ottinger@wrvblaw.com

*Local Counsel for Plaintiff What Hurts, LLC*

28

## CERTIFICATE OF CONFERRAL

Pursuant to this Court's Local Rule 37(E), I HEREBY CERTIFY that Volvo Penta's Florida counsel Christina Paul and Joshua Carpenter conferred in good faith with Plaintiff's lead counsel Scott Wagner via telephone regarding the substance of this motion and the relief sought herein, but the parties were not able to reach an agreement.  Plaintiff does not agree to any of the relief sought in this motion.

        /s/  Christopher A. Abel
Christopher A. Abel (VSB No. 31821)
Amelia Anne Gilmer (VSB No.  98202)
WILLCOX & SAVAGE, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510
Telephone:     757.628.5500
Facsimile:      757.628.5566
cabel@wilsav.com
agilmer@wilsav.com

*Local Counsel for Defendant Volvo Penta of the Americas, LLC*

317659872.1